**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**John E. GURULE, Defendant,**

**and**

**Harold K. Baker, Defendant-Appellant.**

**Nos. 605–69, 606–69.**

United States Court of Appeals, Tenth Circuit.

Oct. 12, 1970.

Rehearing Denied in No. 605–69 Nov. 18, 1970.

E. Douglas Latimer, Albuquerque, N. M., for appellant John E. Gurule.

Michael M. Rueckhaus, Albuquerque, N. M., for appellant Harold K. Baker.

Victor R. Ortega, U. S. Atty., Albuquerque, N. M. (John A. Babington, Asst. U. S. Atty. with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and HICKEY and HOLLOWAY, Circuit Judges.

HICKEY, Circuit Judge.

This is a direct appeal from a conviction of mail fraud, 18 U.S.C. § 1341, at a jury trial in the Federal District for the District of New Mexico. Twice indicted by a grand jury, appellants Gurule and Baker were found guilty of nine counts of mail fraud.

The issues raised attach the overbreadth of the subpoena duces tecum issued by the grand jury, the failure to instruct on appellant's theory of the case, and the sufficiency of the evidence to convict under the mail fraud charges.

The facts disclose that Gurule, an employee of the Santa Fe Railroad authorized to make purchases for the Railroad, was also employed by Hills Auto Electric Company, a supplier for the Railroad. Appellant Baker was an employee of Hills Auto who acted as Manager and received, as additional compensation, a percentage of the company's sales to the railroad.

The purchase orders, records and invoices of the two companies disclosed a series of purchases of miscellaneous goods which were charged to the Railroad through a series of fictitious claims presented to and paid by the railroad company. The checks sent from the railroad company to Hills Auto Electric were transmitted by the United States Mail. The appellants received a percentage of the amounts charged to the railroad. Baker received 3½% and Gurule received 7½% of annual sales to the railroad. The distribution was made after Hills had deposited the checks transmitted by mail to them from the railroad company.

The scheme of ordering these goods and charging them as railroad equipment was not detected for a number of years.

Ultimately Gurule sought to engage another supplier in a similar scheme but was refused and reported. Thereafter, when confronted with the misdeeds and requested to resign, Gurule made personal admissions which were later admitted into evidence.

The attack on the Grand Jury subpoena duces tecum resulted from a subpoena first issued to the president of Hills Auto Electric, commanding him to bring his company's books and records to the Grand Jury. He complied with the subpoena duces tecum and the records were used to obtain an indictment. The indictment was quashed because of irregularity of procedure in the Grand Jury, and a new indictment was obtained within one month. A new subpoena was served on both the president of the Corporation and the accused manager; a motion to impound the records for the trial was made and granted. The foregoing gave rise to the extensive attack on the procedure used to obtain evidence for the Grand Jury.

Corporate records were obtained for inspection by the Grand Jury through the use of a subpoena duces tecum. "Compliance with a Grand Jury subpoena duces tecum is Compulsory." United States v. American Stevedores, 16 F.R.D. 164, 171 (S.D.N.Y.1954). "[B]ooks and records of corporations cannot be insulated from reasonable demands of governmental authorities by a claim of personal privilege on the part of their custodian." Curcio v. United States, 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957). Therefore the attacks of either Gurule or Baker cannot be on the basis of personal privilege against self-incrimination or illegal search and seizure.

The only question then presented is whether the language of the subpoena duces tecum was overbroad or made an otherwise unreasonable request. The language of the subpoena defined the specific records of dealings between the Santa Fe Railroad and its employees and the Company for a period of three years.[1]

"Federal courts have inherent power over their process to prevent abuse, oppression and injustice and the process of the court comprehends proceedings before the grand jury and the means whereby witnesses are compelled to attend such proceedings. [citing cases] However, it has been consistently stated that there should be no curtailment of the inquisitorial power of the grand jury except in the clearest case of abuse, and mere inconvenience not amounting to harassment does not justify judicial interference with the functions of the grand jury." United States v. Johns-Manville Corporation, 213 F.Supp. 65, 72 (E.D.Penn. 1962).

Three components are suggested by the Supreme Court cases. See In Re Grand Jury Subpoena Duces Tecum, etc., 203 F.Supp. 575, 578 (S.D.N.Y.1961). They are (1) the subpoena may command only the production of things relevant to the investigation being pursued; (2) specification of things to be produced must be made with reasonable particularity; and (3) production of records covering only a reasonable period of time may be required. An examination of the language of the subpoena seems to satisfy the components particularly in view of the fact that the records subpoenaed in March, 1968 were limited to the "period of Jan-

---

1. The portion of the subpoena duces tecum objected to commanded Gurule and Baker to "bring with you all of your financial records and correspondence relating to business dealings of your company with the Atchison, Topeka & Santa Fe Railway and any and all of its employees, or on their behalf or instruction, including but not limited to books of account, payroll records, purchasing records, sales records, invoices, sales slips, delivery re- ceipts, bank ledger sheets, cancelled checks and other bank records, inventory records, and records including invoices, sales slips, delivery receipts, purchase orders, and the like relating to purchases made by your company for delivery, by resale or otherwise, to said railway co., or any or all of its employees, or on their behalf or instructions, for the period of January 1, 1965 to December 31, 1967, both inclusive." Tr. Vol. II, page 13.

uary 1, 1965 to December 31, 1967, both inclusive." Because the requested papers were fairly recent, less specificity was required. *See* 8 Moore's Fed. Practice, Criminal Rules, § 17.07. We cannot say that the trial court was clearly in error when he concluded the subpoena duces tecum was neither unreasonable or oppressive.

■ Objections to the instructions given the jury were heard after the jury retired to consider the verdict. This does not comply with Rule 30 Fed.R. Crim.Proc. and would justify our failure to consider the objections. Corbin v. United States, 253 F.2d 646 (10th Cir. 1958). However, in this case, we have chosen to consider it.

■ Appellants contend that the instructions given on their theory of the case were not adequate and the instructions tendered by them more clearly defined the good faith defense and the fact that the Santa Fe was not an unwilling victim. The court satisfies its duty by giving instructions which sufficiently cover the case and which are correct. Elbel v. United States, 364 F.2d 127 (10th Cir. 1966), cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550, reh. denied 386 U.S. 939, 87 S.Ct. 959, 17 L.Ed.2d 812. We examined the instructions as a whole to determine whether the defenses were adequately presented. The instructions given by the court [2] clearly set forth the willing victim and the good faith theory.

The instructions requested [3] related to the defenses of willing victim and good

---

2. "Now it is the contention of the defendants that the acts charged in the Indictment, even if done, did not defraud the Railroad, as they claim all acts done were for some purpose beneficial to the Railroad, and were authorized by an agreement or understanding with appropriate officials of the Railroad.

   "It is the further contention of the defendants that even if the acts did constitute a fraud on the Railroad, that they, the defendants, did not act with intent to defraud, but that all of their actions were in good faith and with the honest belief that they were lawful and legitimate. Good faith is a complete defense to the crime of mail fraud.

   "In determining whether the defendants acted in good faith, or with intent to defraud, you may consider all the acts and circumstances in the case.

   "As with all other elements of the offense charged, the burden is on the Government to establish beyond a reasonable doubt that the acts did constitute a fraud on the Railroad, and that the defendants acted with specific intent to defraud." Tr. Vol. IX, pages 1571, 1572.

3. Defendant's Instruction No. 14—"Therefore, if you find from the evidence that the items mailed by Atchison, Topeka & Santa Fe Railway which were done pursuant to an agreement between the Atchison, Topeka & Santa Fe Railway and Hills Auto Electric, then in that event, I instruct you that the Atchison, Topeka & Santa Fe Railway was not an unwilling victim."

Defendant's Instruction No. 17—"You are instructed that railways are regulated and supervised by the Acts of Congress Relating to Interstate Commerce, sometimes known as the 'Transportation Act' or the Hepburn Act. . Sec. 20 Par. 3 of that Act provides that the Interstate Commerce Commission is authorized to prescribe a uniform system of accounting. Sec. 20 Par. 4 of that Act enjoins the Interstate Commerce Commission from proscribing a system of records for depreciation charges and forbids any carrier from including under 'operating expenses,' any depreciation charge in any form whatsoever other than as proscribed by Congress. In so doing, Congress recognized the essential distinctions between 'property' accounts and 'operating' accounts and also between 'capital' and 'earnings ;' and therefore, Congress recognized that uniformity between various carriers was essential for proper regulation and supervision.

   "You may accept this law concerning any possible effect that it may have relative to your judging the credibility and believability of the testimony of the officers, agents and employees of the Atchison, Topeka & Santa Fe Railway who have testified in this case ; as well as any interest they may have relative to their testimony." Kansas City So. Ry. v. United States, 231 U.S. 423, 34 S.Ct. 125, 58 L.Ed. 296 (1913), 49 U.S.C. § 20, Pars. 3 and 4.

   Defendant's Instruction No. 18—"You are instructed that, in light of the Transportation Act, you may find or infer that

faith, but they went further than presenting a defense in that they inferred malfeasance on the part of the Railroad. The probable malfeasance of the railroad company was not an issue and certainly would not justify the commission of the offense for which appellants were indicted. We conclude the instructions as a whole adequately presented the defenses and also the theory of accused's defense. Appellants are not entitled to elaborate such defenses into charges against the Corporation which were defrauded by actions of appellants themselves.

■ It is contended that appellant Baker did not participate in the scheme and therefore should not have been convicted. The secrecy of the scheme and the personal profit received by Baker for his involvement hereinabove related aided the jury in making the determination that he was involved. Wall v. United States, 384 F.2d 758, 762 (10th Cir. 1967); Holt v. United States, 94 F.2d 90 (10th Cir. 1937). The instructions given covered the facts of the case at bar and the jury made the determination. The tendered instructions did not direct themselves to the facts herein involved and therefore were properly denied.

■ Appellants contend that there is insufficient evidence to show a causal connection between the alleged scheme and the use of the mail. The contention makes important the elements of the offense charged under 18 U.S.C. § 1341. The elements are (a) a fraudulent scheme, and (b) the use of the mails

the Atchison, Topeka & Santa Fe Railway devised a system whereby certain items necessary to the Railway were substituted for other items; and, that this system of substitution was motivated by the Railway's desire to comply with the 'Transportation Act,' you must find the Defendants not guilty of the offense charged."

Defendant's Instruction No. 19—"You are instructed that since the regulation of the railroad carrier by the public authority, and especially the fixing of the rates to be charged, depend primarily upon two fundamental considerations, (a) the value of the property that is employed in the public service, and (b) the current cost of carrying on that service, it is clear that the maintenance of a proper line of distinction between property accounts and operating accounts is essential to the execution by the Interstate Commerce Commission of the supervising and regulating powers conferred upon it by Congress * * * and that railroad including the A.T. & S.F. are required to maintain accounts for this purpose * * *

"You may accept this law concerning any possible effect that it may have relative to your judging and credibility and believability of the testimony of the officers, agents and employees who have testified in this case—as well as any interest they may have concerning their testimony. Kansas City So. Ry. v. U. S., 231 U.S. p. 445 [34 S.Ct. 125, 58 L.Ed. 296]."

Defendant's Instruction No. 20—"You are instructed that Congress has enacted Section 20 of the Interstate Commerce Act, sometimes known as an act to regulate Congress (Commerce). Under this Act, Congress has authorized the Interstate Commerce Commission to inquire as to the business which the carrier does and require the keeping of the uniform acts in order that the Commission may know just how the business of the Railroad is carried on and with the view to regulate that which is in its power. To be informed of the business of the Railroad, so far as its bookkeeping and records are concerned, it may have full knowledge and full disclosures thereof, in order that it may ascertain whether forbidden practices and discriminations are concealed in certain acts and whether charges of expenses are made against one part of the business which ought to be made against the other.

"You may consider this precept of law in your deliberations regarding the weight of the testimony to give officers, agents and employees of the Railroad as it applies to the Railroad's knowledge, acquiescence in, or ratification of the understanding of the defendants concerning an agreement between the Santa Fe Railroad and Hills Auto Electric in permitting the purchase of personal items and other items by what has been testified to be the bootleg system.

"You may also consider this instruction as it applies to the good faith of the defendants." Tr. Vol. VIII, pages 1437, 1439-1442.

for the purpose of executing the fraudulent scheme.

The alleged scheme was the procurement of purchase orders for merchandise charged to the railroad company and paid for by it but never delivered. The material benefit to the appellants was a share of the sales price received by Hills Auto Electric from the Santa Fe Railway. There was evidence to the effect that the transmission of this sales price check which completed the scheme from Santa Fe to Hills Auto Electric was by United States Mail. Appellate Courts view the evidence in the light most favorable to the government, and do not weigh conflicting evidence or consider credibility. Havelock v. United States, 427 F.2d 987 (10th Cir. 1970). Relying upon the foregoing principles we conclude that a causal connection was shown and the mails were used to accomplish the execution of the scheme.

█ Finally, it is the contention of appellant Baker that he was denied his right of confrontation of witnesses used against him. Mr. Leonard Roten, a prosecution witness, testified that he became suspicious and checked invoices to investigate for any dishonesty. Then Roten requested that Gurule resign at which point Gurule made a confession according to Mr. Roten. Tr. Vol. III, pages 382, 383, 384; Tr. Vol. VI, pages 1036, 1045, 1046.

It is apparent that the testimony that might be considered as a confession under the rule in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) did not incriminate Baker, and as a matter of fact did not mention him. The statement incriminated no one but Gurule and Gurule was cross-examined by Baker's counsel on the alleged confession. Thus, it is evident that *Bruton, supra* is inapposite.

We therefore affirm the trial court.