**In re GRAND JURY SUBPOENA DUCES TECUM.**

Civ. No. 72–292.

United States District Court,
D. Maryland.

April 28, 1972.

————◆————

MEMORANDUM OPINION
AND ORDER

BLAIR, District Judge.

Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, a motion

has been filed to quash a subpoena duces tecum commanding the production of various records before a grand jury of the District of Maryland.

■ Historically and as reinforced by Rule 6(e) Fed.R.Crim.P., grand jury proceedings are to be conducted in secrecy. One of the reasons for secrecy is ". . . protection of those who the grand jury ultimately finds are innocent of wrongdoing." 8 Moore's Federal Practice–Cipes, Criminal Rules, ¶ 6.05. In the matter under consideration, there is no need at this juncture that the veil of secrecy be pierced. Therefore, identifying references have been omitted from the body of this opinion and are revealed to the extent necessary in an appendix. The appendix shall be attached only to the original of the opinion and copies which shall be sent to parties in interest as the court shall direct. Numbered references which follow are to the appendix.

The subpoena was properly served upon an Attorney[1] and directed him to appear before the grand jury on a certain date to testify and bring with him all partnership agreements relating to eight named joint ventures[2] and "all letters, files, records and other documents of whatsoever kind in your possession related to such agreements." No other information pertinent to the questions before this court was contained in the subpoena.

The attorney, who now and in the past has represented all of the joint ventures whose records were sought by subpoena, has moved to quash the subpoena for several reasons. These reasons may be grouped in three categories. The first is that the scope of the subpoena is too broad and, therefore, imposes an oppressive and unreasonable burden. Second, he contends the disclosure of the material would violate the attorney-client privilege. Third, he asserts that forced disclosure by use of the subpoena would result in a violation of the Fifth Amendment rights of his clients.

A closed hearing was held by the court on April 3, 1972, at which arguments of the attorney and the United States were presented. Also at the hearing with the consent of the United States were the attorneys for two individuals[3] who believe themselves to be the subject of the present grand jury investigation. In the course of the proceedings, the attorneys for the individuals informed the court that they were satisfied on the basis of representations then being made to the court by the United States that the rights of their individual clients were involved in the current proceedings and oral motions to intervene were made on behalf of each. These motions were taken under advisement by the court and will be ruled on in the course of this opinion.

While the stated objections in support of the motion to quash have in common the material which the government demands be produced, they are distinguished by the grounds upon which they rest. The privilege against self-incrimination is rooted in the Fifth Amendment to the United States Constitution. The attorney-client privilege is based in sound policy and ethical considerations affording confidentiality to the attorney-client relationship. The scope of the material that may be lawfully demanded flows from concepts of reasonableness and underlying Fourth Amendment guarantees that searches and seizures must be reasonable.

The court will touch briefly upon the first two of the stated objections but in view of its decision on the third finds it neither necessary nor desirable to pass on these questions definitively.

■ Facially at least, the records which the government demands be produced appear to be those of the named joint ventures. In his memorandum, the Attorney stated that he is employed as an attorney "by each of the several ventures named in the subpoena . . . and by one or more of the individual participants in said ventures. . . ." The Supreme Court in United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) made it clear that the privilege against self-incrimination is

"essentially a personal one, applying only to natural individuals." 322 U.S. at 698, 64 S.Ct. at 1251. Whether then the privilege is properly asserted in the case at bar is questionable on the facts thus far adduced. In *White*, the Court set out the appropriate standards for determining whether a particular organization or association has standing to invoke the privilege.

> "The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity." 322 U.S. at 701, 64 S.Ct. at 1252.

There appears to be no absolute rule with respect to partnerships. United States v. Silverstein, 314 F.2d 789 (2d Cir.), cert. denied 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963); United States v. Linen Service Council of New Jersey, 141 F.Supp. 511 (D.N.J.1956); In Re Mal Brothers Contracting Co., 444 F.2d 615 (3rd Cir.), cert. denied 404 U. S. 857, 92 S.Ct. 106, 30 L.Ed.2d 99 (1971). An analysis of these cases leads this court to conclude that in the matter at hand there is not before it sufficient information as to the size and scope of the joint ventures here involved to permit a proper determination under the test set forth by the Supreme Court in *White, supra.*

In avoidance of the claimed attorney-client privilege, the government relies on the exception that communications made in furtherance of a crime are not privileged. 8 Wigmore, Evidence, §§ 2298, 2299 (McNaughton rev. 1961). The government says that this court may notice as a fact that an individual[4] prominently involved in the ownership and direction of these joint ventures has been convicted by a federal jury of a certain crime[5] which involved matters in which the joint ventures were interested. In the course of the trial, the presiding federal judge admitted certain evidence on the ground that this individual together with another who apparently had an interest in the joint ventures were parties to a conspiracy. This, the court understands the government to be saying, more than meets the burden it has of making a "prima facie showing," that the communications involved were used in furtherance of a crime. Union Camp Corp. v. Lewis, 385 F.2d 143, 144 (4th Cir. 1967). Granting the validity of this exception to the attorney-client privilege as laid out in *Union Camp*, it is by no means clear that it may be properly applied in this matter. Perhaps it may, but if so its application would seem to depend on a more revealing disclosure of the linkage, if any, between the crimes for which convictions have previously been obtained and the matter now under investigation. Even then, while the exception to the rule may provide the key to unlock the door, it doesn't grant a license to cart off everything in the room without a reasonable showing that everything has relevance and materiality to the subject of the investigation.

These observations with respect to the attorney-client and self-incrimination privileges are necessarily somewhat abstract due to the absence of fact and the broadness of the government's theory and are not to be taken as rulings by this court on the issues involved.

The remaining challenge to the subpoena is on the basis of its scope. Rule 17(c) of Fed.R.Crim.P. provides in part that: "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." Movant, the Attorney, says that it would be. In support of this claim, he says that as an attorney he formed and handled the legal work for each of the eight joint ventures, that the oldest was formed approximately 10 years ago and that the other seven were formed at various

times during the past 10 years, that the files in his possession contain all documents incident to such representation and fill between four and six legal-size file drawers, and that in effect the government is asking for 48 years of records. He further asserts in a memorandum in support of his motion that the subpoena "fails to disclose either the person or persons against whom the inquiry is instituted or the subject of the investigation and is therefore invalid."

◼ Of necessity, grand juries must have very broad investigative powers. United States v. United States District Court for the Southern District of West Virginia, 238 F.2d 713 (4th Cir. 1956), cert. denied 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957); Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L. Ed. 979 (1919). As the Supreme Court said in *Blair*:

> "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." 250 U.S. at 282, 39 S.Ct. at 471.

This does not mean, however, that there are no limits on what a grand jury may subpoena. In United States v. Gurule, 437 F.2d 239 (10th Cir. 1970), cert. denied Baker v. U. S., 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971), the court enumerated three "components" which should be looked to in measuring the reasonableness of a grand jury subpoena.

> "They are (1) the subpoena may command only the production of things relevant to the investigation being pursued; (2) specification of things to be produced must be made with reasonable particularity; and (3) production of records covering only a reasonable period of time may be required." 437 F.2d at 241.

◼ Relevancy and materiality are to be determined, however, not by trial standards but within the context of grand jury proceedings. As the court said in United States v. Schwimmer, 232 F.2d 855 (8th Cir.), cert. denied 352 U. S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956):

> "Relevance and materiality necessarily are terms of broader content in their use as to a grand jury investigation than in their use as to the evidence of a trial. They must be given practical meaning in relation to the functions which a grand jury is designed to serve and to the realities which are necessary in any expeditious carrying-on of its operations. Thus, a grand jury has no catalog of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be. And since the path which it is entitled to travel in its search for probable cause has no general limits except those of reasonableness on the entirety of the situation being pursued, it obviously has a right, as against the objection of unreasonable search and seizure, to a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover. Some exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury." 232 F.2d at 862–863.

Whether the subpoena specifies with reasonable particularity the things to be produced within the limits of relevance and materiality is a question which has

been posed in several cases. In Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906), the grand jury in the course of investigating alleged violations of the Sherman Anti-trust Act subpoenaed all documents relating to any agreements between one company and six other companies from the date of the organization of the first company, all correspondence between the first company and the six other companies, all reports made or accounts rendered by the six companies to the first company, any agreements or contracts between the first company and four companies, and all letters received by the first company since the date of its organization from 13 other companies. As the Supreme Court observed, this was tantamount to requiring the production of all the books, papers, and documents found in the office of the first company and was as indefensible as a search warrant written in the same broad terms. 201 U.S. at 77, 26 S.Ct. 370, 50 L.Ed. 652. The test used by the Court is reasonableness. 201 U.S. at 76, 26 S.Ct. 370. The Court pointed out that the production of these documents could be required only on a showing of necessity or materiality to the matter under investigation. 201 U.S. at 77, 26 S.Ct. 370.

The permissible scope of a grand jury subpoena is perhaps revealed more clearly in *Schwimmer, supra.* In that case, the grand jury was investigating the tax affairs of the clients of one Schwimmer, an attorney, apparently in an attempt to determine what had been done in official circles to bring about a favorable disposition of the clients' tax problems. Two subpoenas were issued. The first commanded the production of "all books, records, files, log books, diaries, memoranda, correspondence, and other documents of Harry I. Schwimmer now on your premises or in your possession, custody or control." The Court of Appeals for the Eighth Circuit found this language to be so unlimited in scope as to amount to an unreasonable search and seizure. The court, however, upheld as reasonable the second subpoena which required the production of

". . . All books, records, files, log books, diaries, memoranda, correspondence, and other documents of Harry I. Schwimmer now on your premises or in your possession, custody or control relating to the affairs of or any matter, proceeding, investigation, or other representation of Irving Sachs, Shu-Stiles, Inc., Mrs. Laura Taylor, and related persons, corporations, and affairs in connection with which the said Harry I. Schwimmer acted and/or participated in any manner whatsoever during the period from on or about September 1, 1945 to date [a period of approximately 10 years], together with all records during the same period recording or reflecting the receipts and disbursements of said Harry I. Schwimmer personally and of any firm or partnership of which he was a member." 232 F.2d at 859. (Footnote omitted)

Where records are sought by subpoena, the length of time over which they have been accumulated is the third variable upon which reasonableness must be judged. As a general rule, a greater specificity in identifying the documents to be produced will permit a longer reach into the past. In Re Grand Jury Subpoena Duces Tecum, etc., 203 F. Supp. 575, 578–582 (S.D.N.Y.1961) (only 10 years held to be reasonable where heavy burden, 18 years where items very specifically described and limited). Where otherwise reasonable, the authorities tend to support the production of documents accumulated within the 10 years preceding the subpoena. In the instant matter, the court rejects the Attorney's argument that the files, relating as they do to eight different joint ventures, should receive a lineal life alignment aggregating 48 years. The oldest file in question was opened approximately 10 years ago and all other files sought fall within this time span. Accordingly, the court concludes that the records sought should be treated as hav-

ing an existence of 10 years or less and that the time involved is not unreasonable.

When all relevant considerations are evaluated, the court is left with what is necessarily a subjective judgment. For a good discussion of these various factors, *see* In Re Grand Jury Subpoena Duces Tecum, *supra.* To the court, the subpoena here appears to be substantially like the subpoena in Hale v. Henkel, *supra,* and the first subpoena issued in Schwimmer, *supra.* The court in *Schwimmer* stated:

> "Ordinarily, as a matter of both extrinsic and intrinsic aspect, the compelled production before a grand jury of all of one's books and papers en masse, where they constitute a substantial body, a variety of accumulation, or an extensive-period product, and the subpoena is without indication or limitation of any nature as to class of persons, or type of transaction, or extent of period, to which the production is intended to be related, will judicially impress as not constituting a reasonable search and seizure." 232 F.2d at 861. (Footnote omitted)

This description is equally applicable to the subpoena under consideration. Even granting the premise asserted earlier in this opinion that grand juries must have broad investigatory powers, this subpoena is overreaching. Since the court has no factual basis upon which to modify the subpoena *sua sponte,* the motion to quash will be granted conditioned upon an order directing the Attorney to preserve the records pending a determination by the grand jury within a reasonable time as to whether it wishes to take further proceedings.

Nothing in this opinion should be construed to mean that upon a proper showing of materiality or relevancy that the Attorney's entire file on the ventures could not be obtained by subpoena.

Hale v. Henkel, *supra.* However, as it stands now and without prejudice to the government to take such other lawful steps as may be indicated, the subpoena must be quashed. Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924).

Finally, it appearing that the rights of those who moved to intervene may be involved in the current proceedings and the government having interposed no objection to such intervention, the motions will be granted.

For the foregoing reasons, it is this 28th day of April, 1972, by the United States District Court for the District of Maryland, ordered:

1. That the motions to intervene made orally on behalf of the two individuals [6] be and the same are hereby granted;

2. That the motion to quash the subpoena duces tecum be and the same is hereby granted without prejudice to the United States to take further proceedings in the matter, upon the express condition noted in (3) below.

3. That the Attorney [7] who filed the motion to quash the subpoena duces tecum retain in his personal possession each and every document or paperwriting of any kind which were on March 21, 1972 a part of the files enumerated in the subpoena duces tecum without change, obliteration or destruction subject to the further order of this court; and

4. That copies of this opinion with appendix attached be sent by the Clerk to the attorneys [8] for all parties in interest and that the appendix filed with the original of this opinion be placed under seal with the other pleadings previously filed and the contents thereof not revealed until further order of this court or some other court of competent jurisdiction.