In the Matter of the Witness Charles G. BERRY, Petitioner.

Nos. 75–1306, 75–1488 and 75–1497.

United States Court of Appeals, Tenth Circuit.

Argued July 30, 1975.

Decided Aug. 1, 1975.

Certiorari Denied Nov. 3, 1975. See 96 S.Ct. 276.

Thomas E. Horn, Legal Director ACLU, New Mexico Chapter, Albuquerque, N. M. (William H. Carpenter, Albuquerque, N. M., on the brief), for witness Berry.

Richard S. Shine, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., on the brief), for the United States.

New Mexico State Bar Association (George Harris, President, New Mexico State Bar Association), amicus curiae.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

PER CURIAM.

These three consolidated appeals relate to orders adjudging witness Berry, an Albuquerque, New Mexico, lawyer, in civil contempt for failure to respond to a federal grand jury *subpoena duces tecum.* The witness is presently confined under one contempt order and is released on his personal recognizance under another. The appeal record includes over 1,000 pages of transcript, 34 sealed cartons of papers which we are asked to examine in camera, and other voluminous documents both sealed and unsealed. Briefs approximating 100 pages were filed on July 29 and arguments were heard on July 30. The 30-day requirement of 28 U.S.C. § 1826(b) mandates us to dispose of the appeals not later than August 2.

## I.

The subpoena served on the witness April 21, 1975, required his appearance before the grand jury on April 25. Witness filed a motion to quash the subpoena on the ground that it violated his Fourth Amendment rights. The motion was denied. Witness appeared before the grand jury on April 25 but refused to produce the papers covered by the subpoena. The government sought a court order for enforcement and, with exceptions not now pertinent, witness was ordered to produce the requested papers on April 30. Witness appeared, asserted federal constitutional rights, and refused to produce the papers. On May 1 the court found witness in civil contempt and entered an order of confinement.

Case No. 75–1306 relates to the May 1 contempt order. We denied an application for a stay. On May 8 Supreme Court Justice Marshall denied a similar application; and witness was placed in custody on that day. On application of the government we made a partial remand to permit the district court to consider compliance. The court found compliance and purged witness of contempt on May 16. He was then released from custody. The government has moved to dismiss No. 75–1306 because of mootness and witness has objected. The appeal in No. 75–1306 is moot. Some of the issues raised in that appeal are also raised in Nos. 75–1488 and 75–1497 and must be considered in connection therewith.

On May 19 witness appeared before the grand jury, produced one box of subpoenaed papers, and claimed that 34 boxes of papers and three ledgers were privileged. After a series of ex parte in camera proceedings the trial court on June 23 rejected the claims of privilege and ordered witness to produce for the grand jury three ledgers and 23 of the cartons of papers which he had withheld. On July 2, the trial court found witness in civil contempt for refusal to obey the June 23 order and ordered confinement. Case No. 75–1488 is an appeal from the July 2 order. The appeal was filed July

3. The § 1826(b) 30-day limitation expires August 1. We denied a stay. Witness is presently confined under the July 2 order.

On July 2 the court also considered witness's claim that certain subpoenaed "trust account ledger cards and four general account ledger cards" were privileged under the Fifth Amendment provision against self-incrimination. The claim was rejected and witness was ordered to produce the records. On July 9 the court found witness in civil contempt for failure to comply with that order. Case No. 75–1497 is an appeal from that order. Witness is not confined thereunder because the court found that the appeal was not frivolous, and released witness on his personal recognizance.

## II.

 We believe that the 30-day limitation imposed by § 1826(b) is mandatory and may not be extended by any waiver, any stay, or release on personal recognizance. Within that period an in camera inspection of the mass of submitted papers is impossible. We can do no more than hurriedly review the transcript and the complex briefs. The burden is on witness to show that he has been deprived of some constitutional rights. We consider his contentions which we believe to be controlling and reject as without merit all of his contentions not mentioned herein.

## III.

Has there been a waiver by petitioner of his Fourth Amendment contention?

 Generally, the witness can challenge the validity of a subpoena duces tecum for reasonableness under the Fourth Amendment by moving to quash the same pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. Initially petitioner complied with this procedural requirement, and in the hearing that followed the trial court found the subpoena to be reasonable within the requirements of the Fourth Amendment and denied the motion. Subsequently, petitioner submitted to a contempt cita-

tion so as to challenge the validity of the *subpoena duces tecum.*

The matter was presented to this court soon thereafter and an expedited briefing schedule was provided. On May 19, however, petitioner produced all of his records in accordance with the subpoena. These were marked as grand jury exhibits. Having complied with the terms of the *subpoena duces tecum* which called for appearance before the grand jury and presentation of the records, Berry purged himself as to the first of the three contempt proceedings which are now before us.

True, he claimed evidentiary privileges in support of his refusal to allow the evidence to be given to the grand jury. Nevertheless, he had fulfilled the requirements of the *subpoena duces tecum* and thus he is at present in a poor position to contend that there was a violation of the Fourth Amendment. As we view it he sought to have the best of both worlds, that is, he made a show of presenting the documents in response to the *subpoena duces tecum* so as to get out of jail and tried, at the same time, to preserve his objections. We conclude, as did the trial court, that he did not succeed.

IV.

■ Assuming that there was not a waiver of Fourth Amendment rights, was the *subpoena duces tecum* invalid as being unreasonably broad under the Fourth Amendment?[1] We are of the opinion that the *subpoena duces tecum* was valid.

Berry contends that the grand jury's subpoena, calling for the production of evidence of virtually all of his law firm's financial transactions for a period of five and one-half years, is so overly broad that it violates his rights under the Fourth Amendment to be protected against unreasonable government searches and seizures. He does not seriously contend that the subpoena here covers an unreasonable length of time. Rather, he argues that the things sought were irrelevant and were not specified with reasonable particularity. The district court heard these contentions on Berry's motion to quash the subpoena and rejected them.

■ This is after all a grand jury investigation in which the government is unable to specify the documents needed. In order to carry out its investigative effort, it must use a broad scale approach. In these circumstances such a course is allowed. *Branzburg v. Hayes,* 408 U.S. 655, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

Our court has spoken on this subject in *United States v. Gurule,* 437 F.2d 239 (10th Cir. 1970). That also was a grand jury investigation in which a *subpoena duces tecum* was issued. Subsequently, there was an indictment, trial and conviction. The subpoena had been issued to a company with which the defendant was associated, which company also sold goods to the Santa Fe Railroad. The defendant had a double agency. He was also a purchasing agent for the Santa Fe. All of the books and records of the selling company, Hills Company, were subpoeaned by the grand jury. This ef-

1. The relevant portion of the subpoena reads as follows:

BRING WITH YOU: for the period from January 1, 1970 to the date of this subpoena, any and all financial records of any type or description which relate, either directly or indirectly, to the financial affairs of Marchiondo & Berry, P.A., any of its predecessor or successor entities or organizations and any entities or organizations which are, either directly or indirectly, affiliated or related to said Professional Association, its predecessor or successor entities or organizations, which records should include but

not be limited to any and all books, ledgers, journals or records of any type relating to income and expenses from professional fees, legal fees or any other type of income; any and all bank statements (sic), cancelled checks, deposit slips or passbooks relating to any checking or savings accounts of said organizations or entities; and any and all records or correspondence of any type, not covered by the attorney-client privilege, with any person or entity relating either directly or indirectly to any of the above records, documents and objects.

fort was challenged on the ground that it constituted a violation of privilege against self-incrimination and illegal search and seizure. In holding that the subpoena was not overbroad, this court laid down three requirements:

1. That the subpoena may command only the production of things relevant to the investigation of the thing being pursued.

2. Specification of things to be produced must be made with reasonable particularity.

3. Production of records covering only a reasonable period of time may be required.

As in the *Gurule* case, the trial court in the case at bar found in its ruling from the bench that the requests here were reasonable in light of the nature of the investigation and the needs of the grand jury. The court also ruled that the subpoena was neither oppressive nor overbroad.

The reliance of petitioner on *Schwimmer v. United States*, 232 F.2d 855 (8th Cir. 1956), and *In re Grand Jury Subpoena Duces Tecum*, 342 F.Supp. 709 (D.Md. 1973), is not well taken. Schwimmer held that the demand for production of all of the attorney's records in the possession of a third party custodian without limitation as to time, including clients' files, was excessive. Here the subpoena calls for production of financial records of the law firm for a five-year period.

*In re Grand Jury, supra*, also turned on its particular facts; the case was decided on the proposition that relevancy was not apparent. A different ruling was given at a later time.

In view of the fact that we are considering a grand jury inquiry in which there was no prior specific knowledge as to the particular documents so as to enable the demands to be with specificity, the subpoena was in our view valid.

We have examined the trial court's ruling on the validity of the *subpoena duces tecum* as the same appears in the transcript, and we are of the opinion that the court was correct in its determinations as to the validity and propriety of the *subpoena duces tecum* irrespective of waiver.

## V.

Mr. Berry asserts a broad scale Fifth Amendment privilege to refuse to produce certain of the law firm's records. He claims the privilege for himself, for Mr. Marchiondo and for his clients.

 The trial court found, in its July 2 Memorandum Opinion that the documents with respect to which Mr. Berry claims privilege were law firm documents, not the personal records either of Marchiondo or of various clients. No privilege can be claimed for these organizational records held in a representative capacity. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). The papers and effects which the privilege protects are those which are the private property of the person in possession, or are at least in his possession in a purely personal capacity. *United States v. White, supra*. Berry cites *United States v. Kasmir*, 499 F.2d 444 (5th Cir. 1974), *cert. granted*, 420 U.S. 907, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975). But *Kasmir* holds only that the privilege is not defeated by a person's putting personal records in the hands of his attorney. It does not hold that privilege is created by the attorney's holding records and does not hold that records of the attorney relating to the client are protected by the client's Fifth Amendment privilege. The trial court here properly required production of the records.

## VI.

Witness's remaining constitutional claims are based on the rights and privileges arising from the attorney-client relationship, and may be lumped together for consideration. Witness says that compliance with the subpoena violates his First Amendment right to freedom

of association, the Fifth Amendment protection against deprivation of due process, and the Sixth Amendment rights of clients and prospective clients of representation by a lawyer. The substance of his arguments is that the subpoenaed papers are within the attorney-client privilege and are irrelevant and immaterial. He contends that enforcement of the subpoena would have a chilling effect on his and the law firm's clients, both present and prospective, and would inhibit the freedom of contract between attorney and client. He asserts that compliance would violate the attorney work-product rule and would constitute a taking of property without just compensation or due process. Finally, he says that enforcement of the subpoena would unlawfully invade his right to privacy.

 In rejecting these wide-ranging claims, the court commented that many were frivolous and not made in good faith. The papers sought were financial records of the professional association of which witness was a member. These records are not privileged. *See United States v. Hodgson,* 10 Cir., 492 F.2d 1175. Relevancy and materiality are not pertinent to subpoena enforcement.

The court emphasized that the claim of privilege did not in the main relate to specific papers but was a shotgun objection to any and all papers which witness did not want to submit to the grand jury. In this regard, witness was given 19 days to specify objections to particular papers claimed to be privileged.

 Time does not permit, and no good purpose would be served by, any detailed analysis of witness' claims of privilege relating to the cartons of papers and ledgers. The court carefully considered the many objections and overruled them. In so doing he carefully reviewed everything that witness offered. The general rule is that an attorney may not normally refuse to disclose the identity of a client. In re Michaelson, 9 Cir., 511 F.2d 882, 888. Nothing in the record shows any reason why the general rule should not be applied here.

We are convinced that the trial court made no error affecting any substantial right of witness.

 No. 75–1497 asserted a Fifth Amendment right based on certain trust account and ledger account cards. In denying these claims the court noted that the financial records sought were those of Marchiondo & Berry, a professional association, and that witness had custody of the papers in a purely representative capacity. An individual cannot raise a Fifth Amendment claim to avoid production of records of an organization held by him in a representative capacity as custodian for the group. *Bellis v. United States,* 417 U.S. 85, 97–99, 94 S.Ct. 2179, 40 L.Ed.2d 678. The Fifth Amendment privilege against compulsory self-incrimination is personal to a defendant or witness. *See United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141. We find no merit in any of witness' constitutional claims based on privilege.

### VII.

Witness claims that the subpoena was the product of forbidden electronic surveillance and under 18 U.S.C. §§ 2518(10)(a) and 3504(a)(1) he may not be required to respond.

On May 19 witness inquired whether the government had by means of electronic surveillance overheard communications between him, any member of his law firm, or any client of the firm. He did not assert that he was an "aggrieved party" within the 18 U.S.C. § 2510(11) definition. The government stated that no one in the United States Attorney's office knew of any electronic surveillance in connection with which either witness, or anyone in his law firm, or any client of the firm was an aggrieved party. Although the government did not concede that witness was an aggrieved party it volunteered to conduct a routine survey of the possibility of electronic surveillance. Witness refused to give the government identifying information as to clients but did provide that infor-

mation for law firm employees on June 6.

On his grand jury appearance on June 27 witness made no § 3504(a)(1) claim. At the July 2 court hearing witness did not claim that he was an aggrieved party to illegal electronic surveillance. In entering the contempt order on that day the court found that the delay in receiving the survey results was due to witness and that "there is no suggestion from anyone, the defense or the United States, that there is any indication whatsoever or evidence indicating the possibility of illegal electronic surveillance or mail cover." Witness made no claim before the July 2 contempt order of being an aggrieved person.

The illegal surveillance claim pertains only to the July 9 order and our case No. 75–1497. On a grand jury appearance on July 8 witness made a colorable claim of being an aggrieved person in connection with surveillance of a James Napoli in New York City. Mr. Napoli is not further identified in the record. On July 9 the government reported to the court that its survey of federal agencies established that witness was not known to be an aggrieved person in connection with any federally conducted electronic surveillance. At the July 9 hearing the court found: "There is absolutely no evidence that there was any electronic surveillance of Mr. Berry." Our attention is called to nothing in the record which questions the validity of this finding.

■■■■ To raise the defense of illegal electronic surveillance in a civil contempt proceeding, a witness must show that he is an aggrieved person. See 18 U.S.C. §§ 2510(11), 2515, 2518(10)(a)(i), 3504(a)(1), and *Gelbard v. United States*, 408 U.S. 41, 61 and fn. 21, 92 S.Ct. 2357, 33 L.Ed.2d 179. An adversary proceeding is necessary only when in camera proceedings are inadequate to protect a defendant's Fourth Amendment rights. *Taglianetti v. United States*, 394 U.S. 316, 317, 89 S.Ct. 1099, 22 L.Ed.2d 302; *cf. United States v. Alderisio*, 10 Cir., 424 F.2d 20, 23. Witness has not shown that he was a party to any intercepted wire or oral communication or a person against whom the interception was directed. Hence, he was not an aggrieved person and has no standing to raise the claim of illegal surveillance. *See* 18 U.S.C. § 2510(11) and *United States v. Capra*, 2 Cir., 501 F.2d 267, 281, *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670.

■■■ The government assured the trial court, and in oral argument assured us, that there was no illegal surveillance of the witness. We credit the government with good faith. Certainly no fact appears in the record to impugn that good faith. When a witness claims illegal surveillance in general and unsubstantiated terms, the government's unsworn general denial, made in response to the court's inquiry, meets the statutory requirements. *See United States v. Stevens*, 5 Cir., 510 F.2d 1101, 1106. We reject the claim of illegal electronic surveillance.

It is ordered:

(1) No. 75–1306 is dismissed.

(2) Nos. 75–1488 and 75–1497 are severally affirmed.

(3) No petition for rehearing may be filed.

(4) Issuance of mandate in each case is stayed for 30 days from this date. In the event witness applies to the United States Supreme Court for certiorari within that 30 days, the mandate is stayed until the Supreme Court disposes of the certiorari.