In re **GRAND JURY SUBPOENAS DU-
CES TECUM ADDRESSED TO CER-
TAIN EXECUTIVE OFFICERS OF the
M. G. ALLEN & ASSOCIATES, INC.**

Misc. No. 75-50.

United States District Court,
D. Rhode Island.

March 31, 1975.

James R. McGowan, Salter, McGowan, Arcaro & Swartz, Inc., Providence, R. I., for movants.

Lincoln C. Almond, U. S. Atty., Providence, R. I., for respondent.

## OPINION

DAY, District Judge.

The controversy presently before the Court concerns itself with the validity of two grand jury subpoenas duces tecum which were issued by the Clerk of this Court on March 7, 1975, pursuant to an application filed on behalf of the United States of America by the United States

Attorney for the District of Rhode Island. Said subpoenas duces tecum commanded the production of certain designated books and records of the M. G. Allen and Associates, Inc.[1] before a federal grand jury in Providence, Rhode Island, on March 11, 1975.

Specifically, the grand jury subpoenas herein involved directed Mr. Max G. Allen, the President of M. G. Allen & Associates, Inc. and Mr. Joseph F. Farrell, the Vice-President of said corporation, to produce the following corporate books and records before the Federal Grand Jury:[2]

1. Bank statements and cancelled checks of M. G. Allen & Associates, Inc., including payroll checks for all checking accounts, open and/or closed, for the period October 1, 1970, through December 31, 1973; and

2. All invoices and bills and other supporting documents justifying entries to the cash disbursements journal for the period October 1, 1970, through December 31, 1973.

This matter is presently before the Court on a motion to quash the two aforementioned grand jury subpoenas duces tecum. Said instant motion to quash was filed on March 11, 1975 by Messrs. Allen and Farrell on behalf of their corporate employer.

The movants have proffered three grounds upon which they claim entitle-

1. Said business entity is incorporated, and has its principal place of business, in Rhode Island.

2. Mr. Allen and Mr. Farrell both were served with one of the grand jury subpoenas in question.

3. Said affidavit was sworn and subscribed to on March 10, 1975. It appears from the face of said affidavit that Mr. McGovern is the "general counsel" for M. G. Allen & Associates, Inc. and that he is presently representing said company in approximately sixteen lawsuits. The value of said affidavit to the movant's instant motion, to the extent any such value exists, obviously lies in the following language which is found in the affidavit's concluding paragraph:

ment to an order quashing the two subpoenas duces tecum in question. First, the movants aver that the two subpoenas herein involved are invalid and unreasonable because (1) they are over broad on their face, that is, the descriptions of the books and records to be produced are so broad as to be unreasonable and oppressive, and (2) there has been no showing by the Government that all of the subpoenaed documents have some relevance to the grand jury's investigation of an offense within its jurisdiction. Second, the movants contend that the two subpoenas in question are "repetitious and harassing" insofar as they command the production of documents and records, the great bulk of which had previously been voluntarily turned over to Internal Revenue Agents by Mr. Farrell. Third, the movants argue that any enforced compliance with that part of the subpoenas herein involved calling for the production of "all invoices and bills and other supporting documents justifying entries to the cash disbursements journal" would be

"unreasonable and oppressive in that loss of custody of such records would interfere with the company's conduct of extensive litigation, as more fully set out in the attached affidavit of attorney Charles J. McGovern . . . ."[3]

Consideration of the merits of these arguments follows immediately below.

"Without continuing custody remaining in M. G. Allen & Associates, Inc. of 'invoices and bills and other supporting documents' and 'cancelled checks' related to the disbursements of this company for the period October 1, 1970, through December 31, 1973 . . . I will be unable to discharge my duties representing this company in the described litigation or effectively prosecute or defend the respective actions."

The movants are clearly attempting to establish that the production demands contained in the subpoenas duces tecum in question are unduly and unreasonably harsh and oppressive. The merits of this position will be discussed in detail below.

## REASONABLENESS OF THE GRAND JURY SUBPOENAS

This Court has previously placed its imprimatur on the well settled, almost proverbial, doctrine that federal courts have the jurisdiction to quash unreasonable and oppressive federal grand jury subpoenas. *See* In re Grand Jury Subpoenas Duces Tecum, Docket Number C. A. 75–191 (D.R.I. 12/27/74); Rule 17(c), Federal Rules of Criminal Procedure; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); United States v. Gurule, 437 F.2d 239 (10th Cir.), cert. denied sub nom, Baker v. United States, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971); Schultz v. Yeager, 293 F.Supp. 794 (D.N.J.), aff'd, 403 F.2d 639 (3rd Cir.), cert. denied, 394 U.S. 961, 89 S.Ct. 1309, 22 L.Ed.2d 562 (1969); In re Grand Jury Subpoena Duces Tecum, etc., 203 F.Supp. 575 (S.D.N.Y.1961); In re Grand Jury Subpoena Duces Tecum, 342 F.Supp. 709 (D.Md.1972). Additionally, this Court has previously recognized that federal grand jury subpoenas which are over broad, and/or which command the production of documents having no proven relevance to a legitimate [4] grand jury investigation, may be considered unreasonable and oppressive. *See* In re Grand Jury Subpoenas Duces Tecum, *supra,* at p. 8; United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972); In re Horowitz, 482 F.2d 72 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); Schwimmer v. United States, *supra*; In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., Inc., 367 F. Supp. 1126 (D.Del.1973).

In the In re Grand Jury Subpoenas Duces Tecum case this Court adopted a three-part test to be utilized in determining whether or not federal grand jury subpoenas duces tecum are unreasonable and oppressive. Specifically, this tripartite test was set forth as follows:

" . . . there are three components, so-called, which this Court must consider in measuring the reasonableness of the seven aforementioned grand jury subpoenas. These three components are:

" . . . (1) The subpoena may command only the production of things relevant to the investigation being pursued; (2) the specification of things to be produced must be made with reasonable particularity; and (3) production of records covering only a reasonable period of time may be required . . . ." United States v. Gurule, supra, [437 F.2d] at p. 241; *see* In re Grand Jury Subpoena Duces Tecum, 342 F.Supp. 709 (D. Md.1972); In re Grand Jury Subpoena Duces Tecum, etc., 203 F.Supp. 575 (S.D.N.Y.1961)." In re Grand Jury Subpoena Duces Tecum, supra, at p. 9.

As a final preliminary to an analysis as to whether or not the two grand jury subpoenas herein involved satisfy this three-part test, it must be noted that a presumption of regularity attaches to all grand jury subpoenas duces tecum. *See* In re Lopreato, 511 F.2d 1150 (1st Cir. 1975); In re Grand Jury Proceedings, Jacqueline Schofield, Witness, 486 F.2d 85 (3rd Cir. 1973); Beverly v. United States, 468 F.2d 732 (5th Cir. 1972). In the face of such a presumption of regularity, and the narrow scope of judicial review of grand jury proceedings and subpoenas, *cf.* In re Grand Jury Proceedings, Schofield, 507 F.2d 963 (3rd Cir. 1975),[5] an indi-

4. A grand jury's investigation will be considered legitimate when it concerns itself with an alleged offense falling within the grand jury's jurisdiction.

5. In the Schofield case Judge Hunter noted that—

"Because of the limited scope of inquiry into abuse of grand jury process, the court concluded that there had been no charge of harassment or unreasonableness and that additional review was, therefore, unnecessary. The slight burden of com-

vidual seeking a court order quashing a grand jury subpoena must maintain a heavy burden of proving that the pertinent grand jury subpoena is unreasonable and oppressive. Specifically persons opposing the enforcement of a grand jury subpoena duces tecum have the initial burden of rebutting said presumption of regularity by introducing evidence which will establish—

1. That the pertinent grand jury subpoena's description of the documents to be produced is so broad as to be unduly oppressive and burdensome; and/or

2. That the pertinent grand jury subpoena's designation of the items to be produced is so generally phrased and non-specific as to render said subpoena's command for production unreasonable; and/or

3. That said pertinent grand jury subpoena's "command for production of documents" covers an unreasonably long period of time.

■ It is of ultimate importance to note that the initial burden of proof concerning the relevance, or lack thereof, of subpoenaed documents to a legitimate grand jury investigation falls upon the party seeking judicial enforcement of said subpoena, that is, said initial burden of proof falls upon the Government. The reason for this apparent reversal of the traditional procedure for allocating burdens of proof lies naturally in the fact that a party seeking to quash a grand jury subpoena duces tecum on the ground that the subpoenaed documents bear no relevance to a legitimate grand jury investigation has, because of secrecy of grand jury deliberations, no pre-compliance knowledge as to the nature of said investigation. Obviously, said moving party cannot, without any knowledge concerning the subject matter of the pertinent grand jury investigation, possibly establish that the particular subpoenaed documents bear no relevance to the unknown investigation. *See* In re Grand Jury Proceedings, Jacqueline Schofield, Witness, *supra*, 486 F.2d at p. 92 ("Certainly the fact of grand jury secrecy suggests that the party seeking enforcement of a grand jury subpoena be required to make some minimum showing of the existence of a proper purpose before it can trigger the enforcement machinery of the judicial branch . . . .").

■ If the Government can establish to the Court's satisfaction that the documents requested have some general relevance to a legitimate grand jury investigation, said prima facie showing of relevance becomes irrebuttable. The parties opposing the enforcement of a grand jury subpoena duces tecum cannot, subsequent to a successful prima facie showing of relevance by the Government, obtain any evidence concerning the nature and purpose of the pertinent grand jury investigation.[6] Additionally,

pliance [imposed upon the government] did not warrant further inquiry into the grand jury's reasons for requesting the information . . . ." (parenthetical explication added), *supra*, at pp. 967–968.

6. Movants seeking to quash grand jury subpoenas have no right to, and a court should not allow, if it is originally satisfied with the government's showing of relevancy, further discovery into the nature, subject matter or purpose of the grand jury investigation in question. In espousing this viewpoint this Court expressly parts company, and disagrees in principle, with the following dicta found in the In re Grand Jury Proceedings, Jacqueline Schofield Witness, decision rendered by the Third Circuit Court of Appeals in 1973.

" . . . If after such disclosure the witness makes application to the district court for additional discovery in the enforcement proceeding *the court must in deciding that request weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the government's representations. . . .* " (emphasis added). 486 F.2d at p. 93.

It is this Court's considered opinion that the exercise of judicial discretion is in no way involved in the disposition of the merits of such a request for additional information. If a court is satisfied with the Government's

said opposing parties cannot introduce any further evidence or offer new testimony in an attempt to rebut the Government's prima facie showing of relevancy. Any factual disputation of said prima facie showing, insofar as it relates to the occurrence of the alleged offense under investigation by the grand jury, must await resolution at a subsequent trial on the merits. *See,* e. g., United States v. Dionisio, *supra,* 410 U. S. at p. 17, 93 S.Ct. at 773 (1972) (" . . . Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede the investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. . . .") In adopting this particular point of view this Court is adhering to the logic and reasoning set forth by Chief Judge Seitz of the Third Circuit Court of Appeals in his concurring opinion in the 1973 Schofield decision. Said concurring opinion reads, in pertinent part as follows:

" . . . I believe the government's disclosure, if the district court is satisfied as to its sufficiency, cannot be made the subject of an adversary hearing by the witness. Such a hearing would lead to the type of mini-hearing which the Supreme Court condemned in Dionisio. I emphasize my position on this point because if I read the opinion of the court correctly, it does not negate the possibility that the minimal showing of proper purpose can be factually litigated by the witness . . . " 486 F.2d at p. 94.

For the sake of clarity and to avoid misunderstanding, a reiteration is in order. If the Government can establish, to the Court's satisfaction, that the documents requested bear some general relevance to a legitimate grand jury investigation, said prima facie showing of relevance becomes completely and unequivocally immune from factual disputation. With

the above noted precepts in mind, an analysis and consideration of the merits of the instant motion to quash will follow immediately below.

### A. DO THE SUBPOENAS IN QUESTION COMMAND ONLY THE PRODUCTION OF DOCUMENTS RELEVANT TO A GRAND JURY INVESTIGATION?

■ Whenever a challenge is posited contesting the validity of a grand jury subpoena duces tecum, the Government must, as a condition precedent to obtaining a court order enforcing said subpoena, maintain an initial minimal burden of proving that the subpoenaed documents bear some general relevance to a legitimate grand jury investigation. *See,* e. g., Schwimmer v. United States, *supra;* In re Morgan, 377 F.Supp. 281, 285 (S.D.N.Y.1974); In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., Inc., *supra;* In re Grand Jury Subpoena Duces Tecum, 342 F. Supp. 709 (D.Md.1972). Although no contest has arisen as to the existence of the Government's aforementioned burden of proof, a disagreement has surfaced as to the extent and scope of said burden. In other words, there is a genuine and profound difference of opinion between the parties presently before the Court as to:

(1) How *minimal* the government's showing of *"general relevance"* can be and still satisfy the aforementioned burden of proof; and

(2) How *general* the relevance of the subpoenaed documents can be to the grand jury investigation in question and still satisfy the same said burden of proof?

It is time for a decisive and definitive resolution of these all too persistently present controversies. There is certainly neither a need nor a justification for the ubiquitous and profound confusion which permeates this area of grand jury

initial relevancy showing, no additional information concerning the nature or purpose of

the grand jury investigation in question can, under any circumstances, be obtained.

law. Hence, the following judicial explication.

As previously mentioned, the Government must, in matters such as those presently before this Court, establish, by at least a minimal showing, that the documents requested bear some general relevance to a legitimate grand jury investigation. What exactly does this generally-phrased judicial precept denote?

 To establish that the documents enumerated in a grand jury subpoena duces tecum bear some general relevance to a legitimate grand jury investigation, the Government has the light, indeed very light, burden of establishing:

(1) The existence of a grand jury investigation; and

(2) The nature and subject matter of said investigation—this requirement is satisfied by the mere recitation of the generic nature of the subject matter under investigation (i. e., a recitation of the fact that the grand jury is investigating possible violations of the Internal Revenue laws of the United States). It must be noted that the Government need not enumerate the specific statutory provisions alleged to have been violated. *See,* e. g., In re Morgan, *supra,* 377 F.Supp. at p. 285 (". . . It is not necessary to define with precision the section of the statute thought to have been violated, for it is not the business of the witness to circumscribe the Grand Jury.

Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919) . . . "). A generic characterization will be sufficient; and

(3) The fact that the subpoenaed documents bear a general relation to the subject matter of the grand jury investigation in question.

As noted above, this burden of proving a general relationship between subpoenaed documents and a grand jury investigation may be characterized as very light and minimal. What must the Government do to maintain this particular aspect of its burden of proof? The Government need only establish that the subpoenaed documents bear *some* possible relationship, however indirect, to the grand jury investigation. For example, if a federal grand jury is investigating possible violations of the Internal Revenue Laws of the United States, a subpoena duces tecum commanding the production of certain financial records of the alleged violator will be upheld if the Government can establish: [7]

(A) That the investigation in question is, in fact, an inquiry into possible violations of the federal tax laws; and

(B) That the financial records sought *may have some possible connection with* said income tax evasion investigation, and so may aid, and be needed by the grand jury in determining whether or not the alleged violative transactions ever occurred.

In formulating, and subsequently adopting, the above noted standard concerning the Government's minimal burden of proving the relevance of subpoenaed documents to a legitimate grand jury investigation, this Court has found the point of view espoused by the Eighth Circuit Court of Appeals, in Schwimmer v. United States, *supra,* to be particularly instructive. In the Schwimmer case, Judge Johnsen writing for the majority, made the following tersely cogent observation:

"Relevance and materiality necessarily are terms of broader content in their

---

7. Naturally, this supposition of judicial affirmance of the validity of a grand jury subpoena duces tecum will only apply where the subpoena is otherwise valid, that is, where said subpoena is otherwise sufficiently specific in its designation of the records to be produced and where said subpoena calls for production of records covering a reasonable period of time.

use as to a grand jury investigation than in their use as to the evidence of a trial. They must be given practical meaning in relation to the functions which a grand jury is designed to serve and to the relations which are necesary in any expeditious carrying-on of its operations. Thus, a grand jury has no catalogue of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore, hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be. . . . Some exploration or fishing necessarily is inherent and entitled to exist in all document productions sought by a grand jury . . . ." 232 F.2d at p. 862.

See, e. g., In re Grand Jury Investigation, 381 F.Supp. 1295, 1299 (E.D.Pa. 1974) ("The 'relevance' demanded of a subpoena issued in the context of a grand jury investigation must be measured by less exacting standards than a subpoena issued during the course of a trial, since a grand jury 'does not depend on a case or controversy to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not' . . . ."); In re Morgan, supra, 377 F.Supp. at p. 285; In re Grand Jury Subpoena Duces Tecum, etc., 203 F.Supp. 575, 578 (S.D.N.Y.1961).

■ Consonant with this aforementioned judicial liberality in assessing government showings of relevancy in cases involving challenges to grand jury subpoenas duces tecum, this Court adheres to the doctrine that the Government need not, in order to establish the required relevancy, prove that each and every document subpoenaed bears a relation to the grand jury investigation in question. On the contrary, the Government's burden of proving relevance contemplates merely a showing that *each general category* of subpoenaed documents bears some possi-

ble relationship to said grand jury investigation. *See* In re Horowitz, 482 F. 2d 72, 79 (2d Cir.), cert. denied, 414 U. S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); Schwimmer v. United States, supra, 232 F.2d at p. 863; In re Morgan, supra, 377 F.Supp. at p. 285; In re Grand Jury Subpoena Duces Tecum, 203 F.Supp. 575, 579 (S.D.N.Y.1961).

In summary, it is this Court's determination that the Government can successfully maintain its initial burden of proving relevance by satisfying the following three-part test. The Government must, as previously mentioned, establish—

1. That there is a pending grand jury investigation; and

2. The general nature of the subject matter of said grand jury investigation; and

3. That some possible relationship exists between the subpoenaed documents and the subject matter of said investigation.

■ In the case presently before this Court, the Government seeks to premise a finding of relevance upon certain information adduced from (A) an affidavit submitted by Mr. Lincoln Almond, the United States Attorney for the District of Rhode Island, and (B) testimony proffered by Special Internal Revenue Agent John Toti at a hearing previously held on the merits of this motion on March 12, 1975.

The aforementioned affidavit links the subpoenaed document to a federal grand jury investigation of two suspected violations of federal law allegedly perpetrated by M. G. Allen & Associates, Inc. The first of the two aforementioned suspected violations is described in paragraph one of Mr. Almond's affidavit. Said paragraph states that—

"An investigation by the Federal Bureau of Investigation and the United States Department of Housing and Urban Development has revealed a possible fraud on the United States with respect to payments received on a contract."

At the March 12th hearing on the merits of the instant motion counsel for the movants objected to any usage of the above cited allegations of fraud in resolving the issue as to whether or not the subpoenaed documents were relevant to a legitimate grand jury investigation. The movants' objection was premised on said allegation's lack of specificity, that is, the movants' objection was premised on the fact that said allegation did not identify or otherwise specifically define the essentials of the Government contract in question. In response to this objection Mr. Almond, during his oral argument, informed the Court that the Government contract under investigation by the grand jury concerned itself with a "Rehabilitation Project involving the Woonsocket Housing Authority". Mr. Almond further informed the Court that said Rehabilitation Project was funded entirely with federal monies.

The nature of the second of the two aforementioned suspected violations of federal law is set forth in the second paragraph of Mr. Almond's affidavit. Said second paragraph reveals the fact that subsequent to an I. R. S. investigation of certain books and records of the M. G. Allen & Associates, Inc.—

> "A referral was made . . . to the office of the United States Attorney for the District of Rhode Island for the purpose of determining possible violations of Titles 18 and 26 of the United States Code committed by M. G. Allen & Associates, Inc., Max G. Allen, President of the same, and Joseph F. Farrell, Vice-President of the same, for the period commencing October 1, 1970, through and including December 31, 1973."

It appears from the testimony elicited at the March 12th hearing on the merits of this motion that said referral by the I. R. S. revealed a substantial possibility that Messrs. Allen and Farrell unlawfully attempted to lessen their employer's federal tax liability by making false entries in its cash disbursements journal.

The question arises as to whether or not the Government has, on the basis of the above cited disclosures, satisfactorily maintained its burden of proving that the subpoenaed documents are relevant to a legitimate grand jury investigation. Unequivocally, and beyond any doubt, a prima facie showing of relevancy has been established.

The Government has apprised this Court not only of the existence of a grand jury investigation, but also of the nature, purpose and subject matter of said investigation. Moreover, each category of records subpoenaed clearly has, or could have, a general relation to the recited subject matter of the grand jury investigation in question.

Accordingly, it is this Court's considered opinion that all of the subpoenaed documents herein involved are clearly relevant to a legitimate grand jury investigation.

**B. THE SPECIFICITY OF THE COMMANDS FOR PRODUCTION**

As previously mentioned, a party opposing judicial enforcement of a grand jury subpoena duces tecum has the burden of proving, inter alia, that the subpoena's designation of the documents to be produced is unreasonably vague and non-specific.

It has been suggested that federal courts should apply a two-part test in determining whether or not a grand jury subpoena duces tecum specifies the documents to be produced with sufficient particularity. *See* In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., Inc., *supra*, 367 F. Supp. at p. 1132. In the *Corrado Bros.* case, the Federal District Court for the District of Delaware set forth this two-part standard as follows:

> " . . . The particularity requirement may be considered as having two prongs: first, particularity of description so that a person attempting to exercise a subpoena may in good faith know what he is being asked to produce; and second, particularity of breadth so that a person in complying with a subpoena in good faith is not

harassed or oppressed to the point that he experiences an unreasonable business detriment." *See* Brown v. United States, 276 U.S. 134, 143, 48 S.Ct. 288, 72 L.Ed. 500 (1928); Schwimmer v. United States, *supra,* 232 F.2d at p. 861; In re Eastman Kodak Co., 7 F.R.D. 760, 763 (W.D.N.Y.1947).

■ Clearly, the movants can, by reading the commands for production contained in the two subpoenas duces tecum herein involved, discern the precise identity of the books and records sought by the federal grand jury. *See,* e. g., Schwimmer v. United States, *supra;* In re Horowitz, *supra;* In re Grand Jury Investigation, *supra;* In re Grand Jury Subpoena Duces Tecum, 342 F.Supp. 709, 710 (D.Md.1972). Additionally, and notwithstanding the movants' superficially persuasive argument that the production demands in question are so broad as to render compliance therewith harsh and unreasonably oppressive, see footnote 4, *supra,* at p. 994, it is this Court's considered opinion that the description of the subpoenaed documents in question is not so broad as to unduly prejudice or harass the movants.

It is hornbook law that—

*"Only in the most extreme case of a clear showing of unreasonableness, of Government abuse of power,* will the Court be induced to quash an otherwise valid grand jury subpoena on the basis it was overly burdensome . . ."* (emphasis added). In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., Inc., *supra,* 367 F. Supp. at p. 1132.

*See* In re Grand Jury Investigation, *supra,* 381 F.Supp. at p. 1298; *cf.* In re Morgan, *supra,* 377 F.Supp. at p. 285 ("But the duty to supply information is not limited by a calculation of the probabilities of the Grand Jury finding a true bill. For the public good, the scales must tip in favor of the duty of the Special Grand Jury 'to inquire into offenses against the criminal laws of the United States' . . . except where the burden cast upon the witness is oppressive in terms of the overbreadth of the subpoena . . .").

■ The subpoenas duces tecum herein involved command production of documents relevant to a grand jury investigation. They are neither overbroad nor non-specific in their description of the documents to be produced. Moreover, they do not operate so as to unduly oppress or harass the movants. Certainly, the facts of the present case will not support a finding that a sufficiently emergent or oppressive situation exists so as to justify the grant of an order quashing the two subpoenas in question.[8]

## C. THE REASONABLENESS OF THE TIME PERIOD COVERED BY THE COMMANDS FOR PRODUCTION IN QUESTION

■ The subpoenas duces tecum herein involved seek the production of certain books and records reflecting M. G. Allen & Associates' financial transactions from October 1, 1970 through December 31, 1973. Said demand for production of corporate books and records covering three and one-quarter (3¼) years is, under circumstances such as those in the present case, prima facie reasonable. *See* Schwimmer v. United States, *supra;* United States v. Gurule, *supra;* In re Grand Jury Subpoena Addressed to Corrado Bros., Inc., *supra;* In re Grand Jury Subpoena Duces Tecum, 342 F.Supp. 709, 713 (D.Md.1972) ("Where otherwise reasonable, the authorities tend to support the production of documents accumulated within the 10 years preceding the subpoena . . ."); In re Grand Jury Subpoena Duces Tecum, 203 F.Supp. 575 (S.D.N.Y.1961).

---

8. It must be noted that a grand jury subpoena duces tecum is not invalid, per se, merely because it commands the production of a large volume of documents. *See* In re Grand Jury Investigation, *supra,* 381 F. Supp. at p. 1298; In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., *supra,* 367 F.Supp. at p. 1132.

In the In re Grand Jury Subpoena Duces Tecum case, the Federal District Court for the Southern District of New York enumerated the criteria to be considered by federal courts in determining whether or not the time period covered by a subpoena duces tecum's command for production is reasonable. The Court held at page 578:

" . . . The period of time with which the records deal should bear some relation to the subject of the investigation. . . . In Application of Linen Supply Companies, 15 F.R.D. 115, 119 (S.D.N.Y.1953), the court said that the following factors might affect the reasonableness of the period covered; 'the type and extent of the investigation; the materiality of the subject matter to the type of investigation; the particularity with which the documents are described; the good faith of the party demanding the broad coverage; [and] a showing of the need for such extended coverage'."

Applying these criteria to the subpoenas presently before the Court, it becomes clearly apparent that the period of time in question, namely three and one-quarter (3¼) years, is not unreasonably long. This Court has already concluded that the subpoenaed documents are relevant to a proper grand jury investigation. Additionally, a finding has been made that the designation of the documents to be produced is sufficiently specific. The Government has clearly established a need for said subpoenaed documents and has, in addition, at all times relevant to the case at bar, acted in good faith.[9]

The final argument posited by the movants which merits consideration is the contention that the subpoenas in question are repetitious and harassing insofar as they command the production of documents and records the great bulk of which has previously been turned over to agents of the Internal Revenue Service. Testimony elicited from Special Agent Toti at the hearing previously held on this matter reveals that Mr. Farrell voluntarily delivered a large number of the subpoenaed documents to Internal Revenue Service Agents on September 4, 1974. Specifically, Special Agent Toti noted that said Internal Revenue Service Agents received the following documents from the files of M. G. Allen & Associates, Inc.:

(1) Some 12,000. cancelled checks covering a period of time extending from October 1, 1970 through December 31, 1973;

(2) The cash receipts and disbursements journals for the years 1970–1973;

(3) Bank records for 1971 and 1973;

(4) Employer's copies of Federal Quarterly Employer's Tax Returns;

(5) Payroll check stubs for 1972 and 1973; and

(6) Bank Reconciliation Folders for 1971 and 1973.

Additionally, Mr. Toti acknowledged that said agents received, on or about October 1, 1973, the minutes of the corporate meetings held in 1970, 1971, 1972 and 1973, the Bank Reconciliation Folder for 1972, and the corporation's general ledger.

All of the aforementioned documents remained in the Government's possession until October 22, 1974. The movants contend that insofar as the Government had a prolonged opportunity to photo-

9. The United States Attorney's office has been extremely fair and reasonable in attempting to assist the movants in their compliance with the two subpoenas in question. This good faith and fair and reasonable conduct is certainly a factor that this Court should consider in reviewing the merits of the instant motion. See, e. g., In re Grand Jury Investigation of the Shipping Industry, 186 F.Supp. 298, 314 (D.D.C.1960) ("The fact is not lost on this Court that the number of documents sought from many of the movants are extensive and that their production may entail a great deal of time, expense and inconvenience. However, neither has it escaped the notice of this Court that the Government has from the beginning been somewhat conciliatory in its demands with respect to the subpoenas . . . "). (emphasis added).

copy the great bulk of the documents in question, said documents cannot now, considering the alleged inconvenience to the movants, properly be subpoenaed by the federal grand jury. In response to this contention the Government has asserted (1) that there is a compelling necessity for the grand jury to view all of the subpoenaed documents [10] and (2) that the decision by the Internal Revenue Service Agents not to photocopy the documents in their possession should not now preclude the grand jury from commanding the production of said documents.

It is this Court's determination that the subpoenas duces tecum presently before the Court are not, and should not be considered, repetitious or harassing. See In re Motion to Quash Subpoenas, etc., 30 F.Supp. 527, 531 (S.D.Cal.1939) (". . . It is claimed by the movants that material called for in the subpoenas has already been obtained in these previous contacts. Undoubtedly the grand jury is not required to accept such earlier furnished matter and is entitled to have produced before it fresh competent evidence . . . ").[11]

In conclusion, it is this Court's considered opinion that the grand jury subpoenas duces tecum herein involved are neither unreasonable nor oppressive. Accordingly, the instant motion to quash said subpoenas must be, and is, denied. The United States Attorney shall prepare an appropriate order in conformity with this opinion.

---

10. The government has argued that the grand jury is planning to conduct certain scientific examinations which can only be performed on the original copy of each of the subpoenaed documents.

11. An additional pertinent circumstance which buttresses this Court's conclusion that the subpoenas in question are not repetitious or harassing is the fact that photocopies of only 5% of the subpoenaed documents are presently in the government's possession. The pertinent question is not, therefore, whether or not the government should be required to proceed with documents previously submitted to it and now in its possession. The government does not possess more than a negligible number of photocopies of the subpoenaed documents. See Petition of Columbia Broadcasting System, Inc., 235 F. Supp. 684, 688 (S.D.N.Y.1964); Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., 20 F.R.D. 303 (E.D.Mich.1957); Application of Linen Supply Companies, supra, 15 F.R.D. at p. 119; cf. Application of Texas Co., 27 F.Supp. 847 (E.D.Tex.1939).