143 N.J. Super. 526 (1976)
363 A.2d 936
IN RE GRAND JURY SUBPOENA DUCES TECUM.
Superior Court of New Jersey, Law Division (Criminal).
Decided August 4, 1976.
*531 Mr. Gerard C. Gross for Samuel Bonow (Messrs. McGahn & Friss, attorneys).
Mr. Stewart D. Warren, Deputy Attorney General, for the State of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
RIMM, J.C.C. Temporarily Assigned.
On July 2, 1974 the Bureau of Medical Care Surveillance, New Jersey Division of Medical Assistance and Health Services, opened an inquiry concerning the Medicaid billing of Nor-Lin Pharmacy. Such inquiry allegedly revealed a relatively high average prescription price and an in-depth field audit ensued. During such field audit, which was conducted on July 10, 11 and 12, 1974, a random sampling was taken of Medicaid billings and compared with prescriptions on file or handwritten notes of telephone prescriptions written on store stationery. This comparison allegedly revealed that Medicaid was billed for a greater quantity of prescription drugs than indicated on prescriptions on file in the pharmacy. Specifically, the quantity of drugs billed to Medicaid allegedly exceeded the quantity of drugs stated on prescriptions by 13.7% in 1970, 21.% in 1971, 33% in 1972, 38.3% in 1973 and approximately 38% during the first four months in 1974.
On August 29, 1974 Samuel Bonow (movant), owner of the pharmacy, was required to appear at a conference with representatives of Medicaid. He was also requested to bring with him 206 prescriptions paid by Medicaid, apparently during the period 1970 thru April 1974. Bonow did in fact produce such prescriptions.
*532 During the conference Bonow allegedly stated that the aforementioned billing discrepancies were attributable to the fact that patients sometimes requested more medication than prescribed and that such requests were granted after telephone consultations and additional drugs dispensed as required by Medicaid regulations N.J.A.C. 10:51-1.5(C) and state law N.J.S.A. 45:14-14 and N.J.S.A. 45:14-16. Bonow maintained, however, that despite any discrepancies the patients had received all medication billed to Medicaid.
This matter was subsequently referred to the New Jersey Division of Criminal Justice, which conducted further investigations. Investigator Mish of that Division avers in an affidavit submitted to this court that:
4. * * * I personally interviewed 9 recipients where Nor-Lin had billed for larger quantities than that indicated on their prescriptions. Of the 9 witnesses interviewed, all denied having requested the dispensing of medication in excess of that called for on their respective prescriptions.
5. Based on my experience and training and my knowledge of the billing pattern of Nor-Lin Pharmacy and my interviews with witnesses, I suspect that the irregular billing pattern is a continuous one existing to the present time. Production of all Medicaid prescriptions, all purchase invoices, and prescription profiles of Medicaid patients from January 1, 1970, to the present time is essential so that a Grand Jury can evaluate whether a crime has been committed and if so, the scope of the offense or offenses.
This matter is presently being investigated by the Atlantic County grand jury, which, on April 2, 1976, served a subpoena duces tecum upon Bonow commanding him to appear and bring with him the following records covering the period from January 1, 1970 to the present: (1) prescriptions and records of prescriptions paid by Medicaid and filed during the above period; (2) invoices and vouchers pertaining to the purchase of prescription drugs; (3) inventory records of prescription drugs; (4) correspondence with physicians or records of telephone conversations with physicians regarding the prescribing for medicaid patients, and (5) prescription profiles of Medicaid patients.
*533 Bonow brings this motion pursuant to R. 1:9-2 seeking to quash the subpoena duces tecum. This rule provides in pertinent part:
* * * The court on motion made promptly may quash or modify the subpoena or notice if compliance would be unreasonable or oppressive.
Movant maintains that compliance with the terms of the subpoena would be unreasonable and unduly oppressive because of the long period of time for which records are demanded and because of the sheer physical size of the records themselves. Moreover, during oral argument, counsel for movant related that transactions involving Medicaid patients constitute only a very small percentage of the pharmacy's business and, therefore, most of the information contained in invoices, vouchers and inventory records of prescription drugs would not be relevant to the grand jury's inquiry.
The State, on the other hand, in support of tts contention that the subpoena is reasonable, points out that the Division of Medical Assistance and Health Services reimburses pharmacists for medication dispensed to Medicaid patients upon submission of Medicaid claim forms which state the type and quantity of medication dispensed and correspond by number to a particular prescription on file. The State also points out that information pertaining to medication dispensed to any particular patient is contained on the patient profile which is required to be kept on file by N.J.A.C. 13:39-9.13. Thus, the State maintains that in order to verify services billed to Medicaid, the claim forms submitted must be compared with the prescriptions or memoranda or oral prescriptions on file and patient profiles, and further, in order to determine whether the pharmacist purchased a quantity of medicine at least equal to that for which he billed Medicaid, his billings must be compared with his purchase invoices in conjunction with his inventory records.
*534 Movant relies upon State v. Cooper, 2 N.J. 540 (1949), in support of his contention that the subpoena is unreasonable and oppressive. He refers to this language:
But the subject of a subpoena duces tecum must be specified with reasonable certainty, and there must be a substantial showing that they contain evidence relevant and material to the issue. If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's necessities, the subpoena is not sustainable. [at 556]
However, the subpoena involved in Cooper directed the recipient to produce certain materials relevant to issues at trial whereas the subpoena involved here has issued from the grand jury. This difference should be borne in mind because the tests of relevancy and materiality employed to determine the reasonableness of subpoenas duces tecum issued at trial are more stringent than the standards used for subpoenas issued by the grand jury. As the court stated in Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. den. 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956):
Relevance and materiality necessarily are terms of broader content in their use as to a grand jury investigation than in their use as to the evidence of a trial. They must be given practical meaning in relation to the functions which a grand jury is designed to serve and to the realities which are necessary in any expeditious carryingon of its operations. Thus, a grand jury has no catalog of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be. And since the path which it is entitled to travel in its search for probable cause has no general limits except those of reasonableness on the entirety of the situation being pursued, it obviously has a right, as against the objection of unreasonable search and seizure, to a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover. Some exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury. [232 F.2d at 862-63] *535 See also, In re Grand Jury Subpoena Duces Tecum, 342 F. Supp. 709, 712 (D. Md. 1972).
Our Supreme Court is in accord with the general concept that a grand jury is to be permitted wide latitude in conducting its investigation. The court noted in In re Addonizio, 53 N.J. 107 (1968), that very little need be shown to justify a grand jury's demand for materials and that very little must suffice if the grand jury is to function. The court observed, further, that
* * * if the investigation is to be meaningful, Some exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury. * * *
We repeat that the authority of a grand jury to make a criminal investigation need not be shown, and that he who asserts an abuse must prove it. [at 126, (citations omitted)].
Of course, what is unreasonable or unduly oppressive in a given case will depend upon the circumstances presented therein. Consequently, there is no talismanic formula upon which we may rely. However, the federal courts have provided some guidance in this area. The test of reasonableness employed by the federal courts is three-pronged. It was articulated by the Tenth Circuit Court of Appeals that
Three components are suggested by the Supreme Court cases. * * * They are (1) the subpoena may command only the production of things relevant to the investigation being pursued; (2) the specification of things to be produced must be made with reasonable particularity; and (3) production of records covering only a reasonable period of time may be required. [United States v. Gurule, 437 F.2d 239, 241 (10 Cir.1970), cert. den. 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971)]
See also, In re Grand Jury Subpoenas Duces Tecum, etc., 391 F. SuppI 991 (D.R.I. 1975); In re Grand Jury Subpoena Duces Tecum, etc. 203 F. Supp. 575 (S.D.N.Y. 1961).
The case of In re Grand Jury Subpoenas Duces Tecum, etc., supra, 391 F. Supp. 991, is illuminating with respect *536 to what must be shown to satisfy the first prong (i.e., relevance). The court characterized the burden of the government in this language:
* * * the Government must * * * establish, by at least a minimal showing, that the documents requested bear some general relevance to a legitimate grand jury investigation. What exactly does this generally-phrased judicial precept denote?
To establish that the documents enumerated in a grand jury subpoena duces tecum bear some general relevance to a legitimate grand jury investigation, the Government has the light, indeed very light, burden of establishing:
(1) The existence of a grand jury investigation; and
(2) The nature and subject matter of said investigation * * *
(3) The fact that the subpoenaed documents bear a general relation to the subject matter of the grand jury investigation in question.
As noted above, this burden of proving a general relationship between subpoenaed documents and a grand jury investigation may be characterized as very light and minimal. What must the Government do to maintain this particular aspect of its burden of proof? The Government need only establish that the subpoenaed documents bear some possible relationship, however indirect, to the grand jury investigation. [at 997; emphasis in original]
In the instant case the State has clearly met its burden. The existence of a grand jury investigation is not disputed. The nature and subject matter of the investigation has been revealed in detail. Finally, the State has shown a substantial nexus between the subpoenaed documents and the investigation. Specifically, the State has shown that prescriptions, memoranda of oral prescriptions, and patient profiles are needed so that they may be compared with medicaid claim forms for the purpose of verifying services billed to medicaid. Purchase invoices and inventory records are required so that it may be determined whether the pharmacist purchased enough medicine to cover his billings. With such a substantial nexus shown, it follows that the State has established that the subpoenaed documents "bear some possible relationship, however indirect, to the grand jury investigation." In re Grand Jury Subpoenas Duces Tecum, etc., supra, 391 F. Supp. at 997.
*537 This showing of relevance is sufficient even though some of the documents sought or that some of the information contained therein might bear no relationship to the investigation. As the court held in In re Grand Jury Subpoenas Duces Tecum, etc.:
* * * this Court adheres to the doctrine that the Government need not, in order to establish the required relevancy, prove that each and every document subpoenaed bears a relation to the grand jury investigation in question. On the contrary, the Government's burden of proving relevance contemplates merely a showing that each general category of subpoenaed documents bears some possible relationship to said grand jury investigation. [391 F. Supp. at 998; emphasis in original]
See also, In re Horowitz, 482 F.2d 72, 79 (2 Cir.1973), cert. den. 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).
The second prong of the test of reasonableness concerns the specificity of the commands for production of the documents. At the outset it is noted that the burden is upon the movant to show that the subpoena's description of the documents to be produced is unreasonably vague and nonspecific. In re Grand Jury Subpoenas Duces Tecum, etc., supra, 391 F. Supp. at 999. The specificity or particularity required is comprised of two components. As the court stated in In re Grand Jury Subpoenas Duces Tecum Addressed to Corrado Bros., Inc., 367 F. Supp. 1126 (D. Del. 1973):
* * * The particularity requirement may be considered as having two prongs: first, particularity of description so that a person attempting to exercise a subpoena may in good faith know what he is being asked to produce; and second, particularity of breadth so that a person in complying with a subpoena in good faith is not harassed or oppressed to the point that he experiences an unreasonable business detriment. [at 1132]
See also, In re Grand Jury Subpoenas Duces Tecum, etc., supra, 391 F. Supp. at 999-1000.
Movant does not contend that the commands of the subpoena are so vague that he cannot determine therefrom *538 what he is to bring to the grand jury. However, he does contend that the document called for constitutes a tremendous bulk and that the requirement of producing current records would have the effect of hampering the business of running the pharmacy itself. In considering movant's contention that the subpoena is unreasonably burdensome because of the tremendous bulk of materials commanded, it should be remembered that "the mere volume of matter sought is not alone a sufficient ground upon which to quash a subpoena." In re Grand Jury Invest., (Local 542  Int. U. of Op. Eng.), 381 F. Supp. 1295, 1298 (E.D. Pa. 1974). In In re Horowitz, supra, 482 F.2d 72, a subpoena duces tecum issued from a grand jury commanding the production of "the contents of all three file cabinets" located at a particular address. Such materials were to be produced to the grand jury which was investigating certain allegations of fraud. The only limitation imposed upon the subpoena by the court was that of relevance. Of course, in the present case such relevance has already been shown. Consequently, this court holds that the subpoena should not be quashed or modified on the grounds it requires movant to produce documents constituting a "tremendous physical bulk."
Movant's contention that the subpoena is unreasonable because it requires production of current records which would hamper the business operations of the pharmacy is meritorious. See In re Grand Jury Subpoenas Duces Tecum Addressed to Corrado Bros. Inc., supra, 367 F. Supp. at 1132. Such an unreasonable business detriment should not be permitted and the subpoena should be limited so as not to deprive the pharmacy of such records as are necessary for its current business operations.[1] However, movant must come forward to prove which records are necessary to carry *539 on the business operations of the pharmacy. See In re Grand Jury Subpoenas Duces Tecum, etc., 391 F. Supp. at 999. The question is whether the time period covered by the subpoena's commands for documents is reasonable under the circumstances herein presented. As noted previously, the subpoena under consideration requires movant to produce various records dating back to 1970. Hence, the period involved is 6 1/2 years. Also, the State has submitted an affidavit which states that the alleged billing discrepancies presently under investigation date back to 1970.
As stated by one court:
Where otherwise reasonable, the authorities tend to support the production of documents accumulated within the 10 years preceding the subpoena. [In re Grand Jury Subpoena Duces Tecum, supra, 342 F. Supp. at 713]
There is no specific time period which will be reasonable in all cases and each case must be determined on its own unique facts. As a general proposition, it may be stated that the period of time with which the subpoenaed records deal is reasonable if it bears some relation to the subject of the investigation. Application of Linen Supply Companies, 15 F.R.D. 115, 119 (S.D.N.Y. 1953). In In re Addonizio, supra, 53 N.J. 107, the grand jury was investigating official corruption in the City of Newark. The grand jury issued a subpoena to Addonizio commanding him to bring with him certain documents. Although the subpoena itself did not specify a period of time, the State informed the court that it intended a time limitation, i.e., the period of Addonizio's incumbency as mayor of the city. (Since Addonizio took office in 1962, and the case was argued before the Supreme Court in October 1968, the time period involved evidently covered approximately six years). The Supreme Court held (at 128) that "the time period  the period of his incumbency in the office of Mayor  is appropriate."
*540 In In re Horowitz, supra, 482 F.2d 72, a grand jury was investigating allegedly fraudulent dealings in connection with a project known as the "Pas" project. A subpoena duces tecum issued directing the production of documents, some of which were over 20 years old. Said the court:
* * * we are told that some of the subpoenaed documents date back to 1951, and it is difficult to see what relevance there could be in papers so long antedating the inception of The Pas project in 1966. Accordingly, we shall limit the subpoena so that in the case of any paper dated prior to January 1, 1966, the government must make a minimal showing that, in light of other evidence that has been obtained, the paper may be relevant to the grand jury's investigation of a federal crime. With respect to papers dated on or after January 1, 1966, we will place the burden the other way. [at 79-80]
As noted previously, the State in the present case has submitted evidence of billing discrepancies dating back to 1970. It is such discrepancies that are being investigated by the Atlantic County grand jury. Hence, the period of time with which the subpoenaed records deal obviously bears some relation to the subject of the investigation. Such being the case, the time period of 6 1/2 years is reasonable.
The subpoena duces tecum issued to Bonow by the Atlantic County grand jury is reasonable except insofar as its command for production of records will unduly hamper the business operations of the pharmacy. However, movant must now come forward to prove which records are necessary to carry on the normal business operations of the pharmacy.
NOTES
[1] Of course, this court has the power to modify a subpoena if compliance would be unreasonable or oppressive. See State v. Cooper, supra, 2 N.J. at 557.