**In re Grand Jury Subpoena to Ronald D. SEIFFERT, Vice President (or) Custodian of the Bank Records of United California Bank.**

**No. 78 Misc. 140.**

United States District Court,
N. D. New York.

March 20, 1978.

**2.** In addition, some or all of plaintiff's other constitutional claims may become moot.

Thomas E. Myers, Bond, Schoeneck & King, Syracuse, N. Y., for petitioners.

Paul V. French, U. S. Atty., Albany, N. Y., for respondent; John J. McCann, Gustave J. DiBianco, Asst. U. S. Attys., Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is a petition to quash a grand jury subpoena duces tecum issued by a federal grand jury empanelled within the Northern District of New York and sitting in Utica, New York. The subpoena in question, dated February 2, 1978, was issued to Ronald D. Seiffert, Vice President of the United California Bank. The Bank was required, by the subpoena, to produce all records pertaining to accounts maintained by petitioners William H. Howton, Vining Tower Reynolds, and/or First Financial Group of Texas, a student loan brokering business operated by Howton and Reynolds.[1]

Petitioners challenge the subpoena duces tecum on several grounds. Initially, they assert that as a direct result of the issuance of the subpoena, the United California Bank has terminated all business relations with them. This, they claim, represents not only a deprivation of liberty or property, thereby requiring Due Process under the Fifth Amendment, but also implicates some degree of applicability of the First Amendment's guarantee of freedom of association. The petitioners further allege that the Government is using the process of this Court as a tool to gather evidence for an S.E.C. investigation. The subpoena itself is attacked as being overbroad, not limited in time, having been served on the Bank without notice to the petitioners,[2] and providing for compliance by delivery to agents of the Federal Bureau of Investigation.[3] Finally, petitioners assert that the subpoena to the Bank was unreasonable and unnecessary, inasmuch as the records sought could well have been supplied by them instead.[4] The petitioners call upon

---

1. The Bank has not appeared in this proceeding. It has, however, consistently indicated its willingness to comply with the subpoena, and has, in fact, forwarded the subpoenaed records, which the Clerk of the Court is maintaining in a safe pending resolution of this motion.

2. Notice, to the petitioners, of the subpoena to the Bank was not required. *Kelley v. United States*, 536 F.2d 897, 899 (9th Cir. 1976), cert. den. 429 U.S. 1047, 97 S.Ct. 756, 50 L.Ed.2d 762, reh. den. 430 U.S. 911, 97 S.Ct. 1188, 51 L.Ed.2d 589; *United States v. Grand Jury Investigation*, 417 F.Supp. 389 (E.D.Pa.1976).

3. There is no impropriety in having the subpoenaed material delivered to the Federal Bureau of Investigation for transmittal to the grand jury. *Matter of Wood*, 430 F.Supp. 41 (S.D.N.Y.1977).

4. The suggestion that the grand jury should have acquired the records from the petitioners themselves suffers from two defects. First, and most obvious, records from the Bank are likely to be more trustworthy than those from a person under investigation. Second, there lurks a Fifth Amendment Self-Incrimination problem with regard to records subpoenaed directly from the individual petitioners, where-

the Government to provide an affidavit demonstrating that: (1) the material under subpoena is relevant to an ongoing investigation by a grand jury; (2) the investigation being conducted is within the jurisdiction of the grand jury involved; and (3) there is no other primary purpose for which the material is being sought.[5]

The Court has the power to supervise the use of subpoenaes, by the grand jury, to gain testimony and evidence in the course of investigations. This power is said to derive from the penumbras of the Fourth Amendment's proscription against unreasonable searches and seizures, *United States v. Grand Jury Investigation*, 417 F.Supp. 389 (E.D.Pa.1976); 8 Moore's Federal Practice-Criminal Rules ¶ 17.11 [2d Ed.Rev. 1977], as well as from the court's inherent ability to supervise the use of process to compel the presence of witnesses, and to oversee the grand jury which it empanels.

The Supreme Court has held that a bank customer has no standing to challenge, based on Fourth Amendment grounds, a grand jury subpoena duces tecum of all bank records pertaining to him. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Other courts have followed suit, finding that a person lacks standing to challenge a subpoena issued to a third party, but pertaining to records relating to the petitioner either on Fourth or Fifth Amendment grounds. See *United States v. Poole*, 557 F.2d 531 (5th Cir. 1977); *Kelley v. United States*, 536 F.2d 897 (9th Cir. 1976); *United States v. Bank of California*, 424 F.Supp. 220 (N.D.Cal.1976); also see *California Bankers Assn. v. Shultz*, 416 U.S. 21, 53, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

*Miller* aside, ordinary principles of standing, deriving from the limitations placed upon the jurisdiction of federal courts by Article III of the United States Constitution, dictate that this petition should be denied. In order to bring a suit in federal court, a party must have suffered some injury having a sufficient nexus to the act complained of. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), reh. den. 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674

---

as there is not when those records are sought from a third-party source. See *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In any event, no court has ever suggested that a grand jury should be so restricted in its sources of evidence in a legitimate investigation.

**5.** The Third Circuit Court of Appeals has taken the position that the court must, in every case, *whether or not a motion to quash has been filed*, satisfy itself of the propriety of a grand jury subpoena. See *In re Grand Jury Proceedings*, 507 F.2d 963 (3d Cir. 1975), cert. den. 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975); see also *Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543 (3d Cir. 1976), cert. den. 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976); *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973) (Schofield I); *United States v. Weiner*, 418 F.Supp. 941 (M.D.Pa.1976), aff'd. 546 F.2d 420, 421 (3d Cir. 1976), cert. den. 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 557. The Third Circuit adheres to the principle that, because of the presumption of regularity attending grand jury proceedings, the ultimate burden of proof rests with the party challenging a grand jury subpoena. However, they reason, in light of the secrecy surrounding a grand jury, see F.R.Crim.P. Rule 6(e), fairness dictates that the Government first be forced to go

forward, by affidavit, and make the aforementioned three-fold showing. *Id.*; see also *In re Grand Jury Investigation*, 425 F.Supp. 717 (S.D. Fla.1977); *In re Grand Jury Subpoenas Duces Tecum, Etc.*, 391 F.Supp. 991 (D.R.I.1975); *In re Grand Jury Subpoena Duces Tecum*, 405 F.Supp. 1192 (N.D.Ga.1975). At least one other circuit Court of Appeals faced with the problem has declined to follow *Schofield*, though it is true that in that case the Government had in fact filed an affidavit satisfying the *Schofield* test. See *Universal Manufacturing Company v. United States*, 508 F.2d 684, 686 fn. 2 (8th Cir. 1975).

The fairest and least intrusive approach would seem to be to require that the Government, in any case wherein a grand jury subpoena is challenged by a party with proper standing, state on the record that there is an investigation being conducted by the grand jury, indicate in *general* terms the nature of the investigation, and demonstrate that the records sought bear some relation to that investigation. The party challenging the subpoena would then have the ultimate burden of showing that the subpoena is unreasonable, overbroad, abusive, harassing, or the like. See *In re Grand Jury Subpoenas Duces Tecum, Etc.*, *supra*.

(1974); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Federal Deposit Insurance Company v. Grella*, 553 F.2d 258 (2d Cir. 1977). Moreover, the injury must be such as to likely be redressed by a favorable decision by the court. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

This Court does not believe that the petitioners have shown a sufficient causal relationship between the subpoena's alleged infirmities and the injury asserted. Petitioners' claims to the contrary notwithstanding, there can be no question that a grand jury may ordinarily acquire, by subpoena, a bank's records pertaining to a customer under investigation. What caused the Bank to terminate its relationship with the petitioners is unknown to this Court. Admittedly, the termination was immediately subsequent to the service of the subpoena, but if this Court quashed the subpoena, the effect upon the Bank's decision to terminate relations with the petitioners is equally unknown. The abuses complained of by petitioners are simply too far removed from the injury asserted to satisfy the Constitutionally-mandated standing requirements.[6]

The petition to quash the subpoena duces tecum issued to the United California Bank is accordingly denied.

It is so ordered.

---

**6.** Were there any evidence that the Government was engaged in a campaign to cause petitioners' customers to terminate business relations with them, thereby forcing them out of business, then perhaps standing might exist. There is not one scintilla of evidence to suggest such an abuse in this case.