RECEIVED

SEP -3 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED.

SEP 2 0 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| In re: Grand Jury Subpoena ) | Miscellaneous No. 10-400 |
| No. 8664653 ) | ~~UNDER SEAL~~ |
| ) | |

### MEMORANDUM OPINION

This matter comes before the Court on ,motion to quash a grand jury

subpoena *duces tecum*. The subpoena orders John Doe to turn over a laptop computer, cell

phone, digital camera, and additional data storage devices acquired from his former employer

:o his termination. John Doe contends that surrender of these items would

violate his constitutional rights under the Fourth and Fifth Amendments. He further alleges that

the grand jury is engaged in an improper investigation on behalf of the Government, and that the

subpoena is oppressive and unreasonable. He alternatively moves the Court to appoint a special

master or magistrate judge to review the requested devices for privileged documents if the Court

upholds the subpoena. Upon consideration of John Doe's motion [1], the Government's

opposition [2], John Doe's reply [4], the applicable law, and the record herein, the Court will

deny the motions and order enforcement of the subpoena.

### I. BACKGROUND

#### A.    Factual History

On December 11, 2009, a District of Columbia grand jury returned sixteen sealed

indictments charging, among others, movant John Doe with various crimes related to a multi-

million dollar foreign bribery and money laundering scheme.[1] (Government's Opp'n to Mot. to

Quash 1, ECF No. 2 (Gov't Opp'n).) The Federal Bureau of Investigation (the FBI) arrested

---

[1]A grand jury returned a superseding indictment on April 16, 2010 XXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

· John Doe and twenty of his alleged co-conspirators on January 18, 2010. (*Id.* at 2.) At the time of his arrest, John Doe possessed a Dell laptop computer and an Apple iPhone. (*See* Reply in Supp. of Mot. to Quash, Ex. A, ECF No. 4 (Reply).) The FBI neither searched nor seized the laptop or the phone, and John Doe took both with him upon his release on bond. (Gov't Opp'n 2.) On January 19, 2010, the Government served Corporation A with a grand jury subpoena requesting documents related to the company's historical sales to foreign Governments. (*Id.* at 3.) Corporation A terminated John Doe the following day. (*Id.*)

Attorneys for the Government and Corporation A met several times after January 19th to discuss the company's response to the subpoena. On April 22, 2010, Corporation A informed the Government that responsive documentation may be on John Doe's company-issued laptop, which the company believed the FBI had seized on the night of the arrest and John Doe had not returned to the company upon his termination. (Gov't Opp'n 3.) Corporation A sent John Doe a letter through his attorney on May 4, 2010, demanding the return of various company items, including: an Apple iPhone, _____ ___ (the iPhone); a Dell laptop, Service ⸮(the Dell laptop); a digital camera; and various data storage devices, records, and notes. (*Id.,* Ex. C.) On May 7, 2010, John Doe's attorney responded with a counter-demand for proof of ownership of the listed items. (*Id.,* Ex. D.) John Doe proposed to purchase the equipment and provide copies of Corporation A's documents or alternatively to remove "privileged communications and personal information" from the devices and "provide copies of [the company]." (*Id.*)[2]

The Government served Corporation A with a second grand jury subpoena on May 19,

---

[2]Corporation B is a wholly owned subsidiary of Corporation A. (Gov't Opp'n 2.)

2010, requesting electronic devices used by John Doe during his employment with the company, including the iPhone, the Dell laptop, the digital camera, and the data storage devices. (*Id.*, Ex. F.) Corporation A sent John Doe a second letter informing him of the subpoena and reiterating its demand for the above-listed electronic devices on May 28, 2010. (*Id.*, Ex. G.) On June 7, 2010, John Doe's attorney replied with a second demand for proof of ownership and stated that he would "not disclose information that is privileged or personal" absent a court order. (*Id.*, Ex. H.) Corporation A responded to this letter on June 10, 2010, with five attachments showing the purchase of a Dell laptop and a Skype phone by Corporation B, both of which were delivered to John Doe. (*Id.*, Ex. I.) The Government served John Doe, through his attorney, with a third grand jury subpoena on June 14, 2010, that requested the production of the iPhone, the Dell laptop, the digital camera, and the data storage devices. (*Id.*, Ex. J.)

## B. Movant's Claims and Government's Opposition

John Doe filed the present motion to quash the third subpoena on June 23, 2010. (Mot. to Quash Subpoena (Mot. Quash).) In this motion he argues that "while the Government seeks to compel production of a computer and other electronic devices, it obviously seeks documents." (*Id.* at 4.) Based upon this conclusion, John Doe raises four points of objection to the subpoena: first, it violates his Fifth Amendment right against self-incrimination (*id.* at 2-4); second, it is an abuse of grand jury power (*id.* at 8-11); third, it is oppressive and unreasonable (*id.* at 12-15); fourth, it violates his Fourth Amendment right against unreasonable search and seizure (*id.* at 15-16). John Doe alternatively asks that the Court order a review of the devices by a special master to remove privileged documents if the Court does not quash the subpoena and that the Court reject the Government's proposed use of a taint team. (*Id.* at 4-8).

3

The Government filed an opposition to John Doe's motion on July 7, 2010. (Gov't Opp'n.) The Government contests John Doe's characterization of the subpoena, stating that it seeks only "*the production of certain devices* known to the Government." (*Id.* at 7-8 (emphasis in original).) The Government challenges all of John Doe's claims on the merits and additionally challenges his fourth claim as lacking standing. It also argues that John Doe's request for a special master and challenge to the Government taint team are unripe for adjudication. John Doe filed a reply to the Government's objection on July 26, 2010, in which he generally reasserts all arguments made in his original motion. (Reply.)

## II. LEGAL STANDARD

The public, through the grand jury, generally "has a right to every man's evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974) (internal quotations and citation omitted). Like a formal criminal investigation, the grand jury may issue subpoenas through the Government to compel witnesses to testify and order the production of evidence. *See United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). Unlike a formal criminal prosecution, "the grand jury 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Id.* (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)). The Supreme Court has made clear "that many of the rules and restrictions that apply at a trial do not apply in grand jury proceedings . . . [t]his is especially true of evidentiary restrictions." *Id.* at 298. Accordingly, the Government need not justify the issuance of a grand jury subpoena to a level adequate to establish probable cause, as "the very purpose of requesting the information is to ascertain whether probable cause exists." *Id.* at 297.

Although the public "has a right to every man's evidence," the grand jury's subpoena

4

power is not without limit. *See Nixon*, 418 U.S. at 709. The grand jury may not compel testimony from "those persons protected by a constitutional, common-law, or statutory privilege." *Id.* Furthermore, it may not "engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *R. Enters., Inc.*, 498 U.S. at 299. The Court may, on motion made, quash or modify a grand jury subpoenas "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). However, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *R. Enters. Inc.*, 498 U.S. at 301. Furthermore, the Court must remain mindful of "the public's interest in the fair and expeditious administration of the criminal laws." *See United States v. Dionisio*, 410 U.S. 1, 17 (1973). "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate [that] interest." *Id.*

### III. ANALYSIS

#### A.    The Subpoena Does Not Violate John Doe's Fifth Amendment Rights

John Doe argues that "while the Government seeks to compel production of a computer and other electronic devices, it obviously seeks documents." (Mot. Quash 4.) John Doe therefore equates the subpoena for the electronic devices with a subpoena for the documents saved on them. (*See id.*) Based upon this conclusion, he argues that the subpoena violates his 5th amendment right against self-incrimination under the act of production doctrine by compelling him to "testify" as to the existence of any documents found. (*Id.* at 2-4). The Government challenges John Doe's characterization of the subpoena, stating that it seeks only "*the production of certain electronic devices* known to the Government," and that it intends to "safeguard the . . .

5

rights of whomever owns the electronic devices." (Gov't' Opp'n 7-8 (emphasis in original).) The Government argues that the surrender of the electronic devices would only testify to the fact that John Doe does in fact possess them, a fact that he has allegedly conceded already through his correspondence, and that his Fifth Amendment claim must fail. (*Id.* at 9.)

1.    Applicable Law

The Fifth Amendment reads in pertinent part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This protection "applies only when the accused is compelled to make a Testimonial Communication that is incriminating" and does not necessarily bar compelled production of all forms of incriminating evidence. *Fisher v. United States*, 425 U.S. 391, 408 (1976). However, "[t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the documents produced. *Id.* at 410. "By producing documents in compliance with a subpoena, the witness . . . admit[s] that the papers existed, were in his possession or control, and were authentic." *United States v. Hubbell*, 530 U.S. 27, 37 (2000) (internal quotations and citation omitted). The Government must have reasonably particular prior knowledge of the existence and location of the requested items. *See United States v. Ponds*, 454 F.3d 313, 320 (D.C. Cir. 2006). If production of the requested items adds to "the sum total of the Government's information" regarding the existence and location of those items, the accused's act of production shall be considered testimonial, as he would use "the contents of his own mind" to locate and identify responsive items for the Government. *See Hubbell*, 530 U.S. at 43-44.

2.    Analysis

6

a.    *The Subpoena Compels Production of the Devices Only*

The Court must first determine what exactly the subpoena asks for, as this determination

will guide the Court's analysis of John Doe's Fifth Amendment claim. John Doe urges the Court

to treat the subpoena of the electronic devices as a subpoena for the documents saved on the data

drives of those devices. (Mot. Quash 4; *see also* Reply 2.) Although the Government does not

deny that documents are its end-goal, it asserts that the challenged subpoena only gives the grand

jury authority to compel production of the physical devices, and it does "not [grant] authority to

review documents that may be on those devices." (Gov't Opp'n 7.)

The plain wording of the subpoena compels the production of "items of property that you

[John Doe] obtained from Corporation A prior to the termination of your employment,"

including the Dell laptop, the iPhone, a digital camera, and additional data storage devices.[3]

(Mot. Quash, Ex. A.) The subpoena makes no mention of the data drives on those devices or the

documents saved on those drives. (*See id.*) John Doe presents no authority that allows the Court

to read a plain request for an electronic device as a request for the documents saved on the

device's data drive. Indeed, the Court finds support for the opposite proposition that production

of an electronic device - or even the devices' data drive - is distinct from production of

documents saved on that device or data drive. *See, e.g., Turlock v. Freeh*, 275 F.3d 391, 403 (4th

Cir. 2001) (consent to search the hard drive of a shared computer by one cohabitant does not give

authorities consent to search the other cohabitants password-protected documents); *United States

v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 37 (D. Conn. 2002) (subpoena to compel

---

[3] John Doe states that the subpoena compels him to appear and testify before the grand jury. This is incorrect. (*See* Mot. Quash, Ex. A ("IN LIEU OF APPEARANCE, COMPLIANCE MAY BE MADE BY MAILING THE REQUESTED ITEMS....") (capitalization in original).)

7

. production of a laptop was distinct from a warrant to search and seize the laptop's hard drive and documents).[4] Accordingly, the Court finds no reason to deviate from the plain language of the subpoena and will read it as a request for the physical devices only.

  b.  *The Subpoena Does Not Compel Testimony*

The Government contends that it has reasonably particular knowledge of the existence and current location of the subpoenaed devices based upon the pre-indictment investigation. (Gov't Opp'n 12.) The Court agrees. The evidence shows that the grand jury issued the present subpoena only after attempting to secure the requested devices from Corporation A. (*See id.*, Ex. F.) As discussed above, Corporation A went through an extensive negotiation process with John Doe in an attempt to recover its property, during which time the existence of the items requested in the present subpoena came to light. (*See id.*, Ex. C.) Although John Doe has not explicitly stated that he possesses the requested devices, the unchallenged facts of this case, along with John Doe's statements in the evidence and in his pleadings, make the location of the devices all but certain. (*See id.* at 2 (John Doe arrested and released with iPhone and Dell laptop); *id.*, Ex. D (John Doe offers to either buy the requested items from Corporation A or remove "privileged communications and personal information" before returning them); Mot. Quash 5 (John Doe states that protected documents "are almost certainly contained on the electronic devices sought by the Grand Jury").) The Court finds this to be reasonably particular prior knowledge of both

---

[4]John Doe challenges this reading of *Triumph Capital Group, Inc.*, stating that "[t]he Court [in *Triumph*] found that the subpoena was properly used only because it was necessary to preserve the evidence [on the computer]." (Reply 2 n.2.) This is a grossly inaccurate reading of *Triumph*. The court in *Triumph* plainly stated that it upheld the subpoena because "the defendants [] failed to show that the Government had an improper purpose in using the forthwith subpoena." *Triumph Capital Group, Inc.*, 211 F.R.D. at 54. While the *Triumph* court supported its conclusion by discussing the exigent circumstances surrounding the issuance of this subpoena, *see id.* at 55-56, this was in addition to the fact that the defendants failed to carry their burden to show adequate reason why the subpoena should be quashed. *See id.* at 54 (citing to *R. Enters., Inc.*, 498 U.S. at 292.)

the existence and location of the physical devices.

John Doe challenges this conclusion, stating that Corporation A has failed to prove conclusive ownership of the requested devices and the above statements therefore concede nothing. (*See* Reply 14, n.7.) However, the Government need not conclusively prove Corporation A's ownership in order to justify the subpoena. *See Ponds*, 454 F.3d at 320. To the contrary, the movant has the burden to show that the act of producing the requested items would force him to use "the contents of his own mind" to add to "the sum total of the Government's information" before the Court will quash a subpoena. *See* Fed. R. Crim. P. 17(c); *Hubbell*, 530 U.S. at 43-44. The Government has presented evidence of its reasonably particular knowledge of the devices' existence and current location. John Doe's naked challenge does not undermine this evidence and does not meet his burden of proof. The Court concludes that John Doe's production of the devices would not be testimonial and finds no reason to quash the subpoena on Fifth Amendment grounds.

## B.   The Subpoena is Not an Abuse of Grand Jury Power

John Doe claims the grand jury issued the third subpoena only to aid the Government's pre-trial investigation against him and that the Court should quash the subpoena as an abuse of grand jury power. (Mot. Quash 8-11.) He argues that the Government is only seeking evidence as part of pre-trial discovery as opposed to pre-indictment investigation. (*Id.* at 11.) He claims that "given that the Grand Jury has handed up an Indictment and a Superseding Indictment . . . he has made a *prima facie* showing of grand jury abuse[.]" (*Id.*) He further argues that the fact that the grand jury issued the subpoena so long after his initial arrests and indictment proves that the Government is using the grand jury as a discovery tool. (Reply 11.) John Doe accordingly

9

claims that the Government has the burden "to rebut this evidence or define the scope of the abuse." (Mot. Quash 11.) The Government argues that John Doe has failed to carry his burden to rebut the presumption of regularity given to grand jury proceedings with "particularized proof" of an improper motive. (Gov't Opp'n 16.) It specifically challenges John Doe's contention that the previous indictments are *prima facie* proof of abuse, stating that "John Doe cites no law supporting this extraordinary claim." (*Id.* at 15.)

1.      Applicable Law

The best purpose of the grand jury is to provide a fair method for initiating criminal proceedings against persons believed to have committed crimes via its power to issue criminal indictments. *Costello v. United States*, 350 U.S. 359, 362 (1956). The Government may not use it as a tool to "engage in arbitrary fishing expeditions" or to "investigat[e] out of malice or an intent to harass." *See R. Enters., Inc.*, 498 U.S. at 299. The Court gives grand jury proceedings a presumption of regularity, and the movant must make a of factual showing of abuse to rebut this presumption. *See United States v. Johnson*, 319 U.S. 503, 513 (1943); *see also United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring) (presumption of regularity "may be dispelled only upon particularized proof of irregularities").

2.      Analysis

John Doe pleads no facts that even raise suspicion of, much less prove, grand jury abuse. He indeed fails to cite any case to demonstrate that the two previous indictments against him make out a *prima facie* case of abuse. Furthermore, the grand jury is entitled to continue its criminal investigation and may lawfully issue another superseding indictment. *See Costello*, 350 U.S. at 362. The Court presumes that the grand jury seeks evidence in furtherance of this pre-

10

· indictment investigation until the movant affirmatively proves otherwise. *See Johnson*, 319 U.S. at 513. The Court finds unpersuasive John Doe's contention that the lengthy intermediate period between his arrest and the issuance of the present subpoena demonstrates grand jury abuse. The Government gives a very plausible explanation as to why the grand jury did not issue this subpoena until almost four months after his arrest. (*See* Gov't Opp'n 1-5) (explaining that the FBI did not have probable cause to seize the devices on the night of John Doe's arrest and neither Corporation A nor the Government discovered that he still have the devices until April, 2010). With no "particularized proof" of abuse, John Doe fails to rebut the presumption of regularity afforded to the grand jury proceedings. *See Mechanik*, 475 U.S. at 75 (O'Connor, J., concurring). The Court therefore declines to quash the subpoena on this ground.

### C.    The Subpoena Is Neither Oppressive Nor Unreasonable

Finally, John Doe urges the Court to quash the subpoena as oppressively overbroad under Rule 17(c)(2) of the Federal Rules of Criminal Procedure. (Mot. Quash 12.) He additionally objects to the subpoena under the Fourth Amendment, claiming that its terms constitute an unreasonable search. (*Id.* at 15.) He states that the subpoena seeks "every email, photograph, telephone number, and document on the electronic devices," (*id.*), fails to specify any category of documents to be produced, (*id.* at 14), and does not set a reasonable time period within which it seeks documents, (*id.*). He further claims that his long-term possessory interest in the devices vests him with a legitimate expectation of privacy, (Reply 14), and that his "privacy rights are being invaded by this all-encompassing dragnet subpoena" and that "personal financial records, emails to friends and family, and personal mementos" would be seized by its enforcement, (Mot. Quash 16).

11

The Government challenges John Doe's standing to raise his Fourth Amendment challenge because he has not claimed ownership of nor shown a reasonable privacy expectation in the subpoenaed devices. (Gov't Opp'n 20-21.) It additionally argues that John Doe has failed to prove that the subpoena is either oppressive or unreasonable under Rule 17 or the Fourth Amendment. (*Id.* at 17, 21-22.) It reasserts that the subpoena only requests the devices and not the documents saved on them. (*Id.* at 17.) The Government further argues that compliance with the subpoena does not involve a substantial commitment of resources by John Doe, (*id.* at 18), does not impose a hardship on him because the Government will give him a mirror image of all saved data, (*id.*), requests only objects relevant to the grand jury's investigation, (*id.* at 17-18), and cannot be narrowed without hampering the investigation, (*id.* at 18).

1.    Applicable Law

The Court may quash or modify a subpoena if the Court finds that compliance would be oppressive or unreasonable. Fed. R. Crim. P. 17(c)(2). This includes unreasonable demands for the production of evidence, as "[t]he Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms 'to be regarded as reasonable.'" *Dionisio*, 410 U.S. at 11-12 (quoting *Hale v. Henkel*, 201 U.S. 43, 46 (1906)). A properly issued grand jury subpoena is presumptively valid. *R. Enters., Inc.*, 498 U.S. at 301. The burden of proving unreasonableness or oppressiveness falls on the movant. *See Dionisio*, 410 U.S. at 16 (grand jury does not have to make a preliminary showing of reasonableness for evidence or testimony requested).

Inquiries into oppressiveness and unreasonableness are highly factual in nature, and courts do not apply a universal standard of review to these issues. Both the Government and

12

John Doe have proposed different - yet substantially similar - standards for this inquiry. (Mot. Quash 12 (citing *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir. 1970)); Gov't Opp'n 18 (citing 1 Sara Sun Beal, *Grand Jury Law and Practice* § 6:20 (2d ed. 2001)).) The Court finds both sources informative. Based upon a distillation of the analytical frameworks from both sources, the Court will consider the relevance of the objects requested by the subpoena, the particularity of the request, and the hardship of compliance imposed upon the subpoenaed party. *Compare Gurule*, 437 F.2d at 241, *with* Beal, *supra.*

2. Analysis

John Doe's Rule 17 claim suffers from the same fatal flaw as his Fifth Amendment claim, in that it conflates subpoena of electronic devices with subpoena for the data saved on them. His arguments as to the relevance, particularity, and hardship caused by the subpoena all focus on the data and are therefore inapplicable. (*See* Mot. Quash 12-16.) John Doe therefore fails to carry his burden to rebut the presumptive validity of the grand jury subpoena. Furthermore, the Court finds persuasive the Government's argument that the subpoena is both relevant and particular, as it requests electronic devices issued to John Doe by his employer and used by him during a period of time during which he and other are suspected of engaging in criminal activity. (*See* Gov't Opp'n 17-18.) The Government's offer to provide John Doe a mirror image of all data saved on the devices alleviates any hardship that he may suffer by parting with the devices. The Court therefore finds the terms of the subpoena to be reasonable.

John Doe fails to prove an ownership interest in the requested devices, and he has no

13

· legitimate privacy interest in the devices under the Fourth Amendment.[5] In addition, the Court has already decided that the terms of the subpoena are reasonable pursuant to John Doe's general Rule 17 objection. His Fourth Amendment claim would fail even if he had clear standing to raise it. The Court will accordingly deny John Doe's motion to quash the subpoena and will order his timely compliance.

### D. John Doe's Request for Private Privilege Review Is Ripe; Review by a Special Master Is Not Appropriate in This Case

John Doe alternatively requests that the Court appoint a special master or magistrate judge to review and remove privileged documents from the devices before turning them over to the Government.[6] (Reply 7.) He claims that privileged documents "are almost certainly contained on the electronic devices sought by the Grand Jury." (Mot. Quash 5.) John Doe asks the Court to reject the Government's previously-made offer to use a taint team to conduct a privilege review, stating that the team's "naturally more restrictive view of privilege will needlessly risk the exposure of privileged documents." (Mot. Quash 7.) The Government argues that neither of these issues are ripe for review, as the subpoena requests only the physical devices and not the potentially privileged data

---

[5]John Doe's employer - Corporation B - has an Employee Handbook that lays out every employee's privacy interest in company property. The Handbook states: "Corporation B will provide you with the necessary equipment to do your job. None of this equipment should be used for personal use . . . . Computer equipment, including laptops, may not be used for personal use . . . E-mail and Internet usage will be monitored from time to time . . . . All employees, upon hire, will be required to sign an agreement with Corporation B stating that this policy and disciplinary action for violations is understood and agreed to." (Gov't Opp'n, Ex. B.) This policy demonstrates that an employee such as John Doe has no privacy interest in documents stored on company property, including the subpoenaed items.

[6]John Doe originally asked the Court to allow defense counsel to review and segregate privileged documents before turning the devices over to the Government. (Mot. Quash 8.) The Government objects to this request, stating that John Doe cites no law that would entitle him to such a review and that "the integrity of evidence sought by the grand jury may be compromised by any attempt by John Doe to provide only select files." (Gov't Opp'n 14-15.) John Doe tweaks his request in his reply and asks for review by a magistrate judge. (Reply 7.) Both review by a private expert (defense counsel) and review by a magistrate judge are variants of a special master's review, and the Court considers both requests as such.

14

on them. (Gov't Opp'n 14-15.) The Government assures that its taint team procedure will adequately address John Doe's privilege concerns when they do become ripe. (*Id.* at 15.)

1.     Ripeness

a.     *Applicable Law*

"The ripeness doctrine is a justiciability doctrine 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitatlity Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993)). In determining whether an issue is ripe for review, the Court applies a two part test to analyze: 1) the fitness of the issues for judicial decision; and 2) the hardship to the parties of withholding court consideration. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). The Court also considers the basic policy rationale behind the ripeness doctrine: "Article III courts should not make decisions unless they have to." *See id.*

b.     *Analysis*

The Court finds that John Doe's request for a special master's review and objection to the Government's taint team procedure are both ripe for review. Indeed, the underlying objective of John Doe's request is to have privileged documents removed before the electronic devices are relinquished to the Government. (*See* Mot. Quash 7.) Once the Government comes into possession of the devices, his concerns will be moot. He will lose his opportunity to have his request adjudicated and may accordingly suffer hardship unless he posits the Court hears his concerns now. The issue presents no fitness problems, as both sides have tendered arguments on the matter. (*See* Mot. Quash 7; Gov't Opp'n 15.) While John Doe's objection to the Government's taint team

15

· procedure may arguably be addressed at a later date, the Court must address this objection before it can fully consider John Doe's request for a special master since the taint team is a viable alternative to review by a special master. Accordingly, the Court will address the merits of both issues.

    2.    Objection to the Taint Team

    a.    *Applicable Law*

The Court has three primary tools at its disposal for separation and review of potentially privileged documents: *in camera* review, review by a special master, and review by a Government privilege or "taint" team. The last of these three options is a relatively modern concept that appears to have evolved as a pragmatic response to the growing problems with electronic discovery.[7] Courts currently disagree over the validity and appropriate use of these Government teams. *See United States v. Neill*, 952 F. Supp. 834, 840 n.13 (D.D.C. 1997) (Green, J.) (comparing cases for and against the use of a filter team). Neither the Court of Appeals for the D.C. Circuit nor this Court have an established rule that they use to judge the appropriateness of these taint teams. John Doe asks the Court to follow the lead of *United States v. Jackson*, No. 07-035, 2007 WL 3230140 (D.D.C. October 30, 2007) (Robertson, J.), and adopt the Sixth Circuit's standard that taint teams should only be considered in limited circumstances, such as when the Government already has possession of the allegedly privileged documents. (Mot. Quash 6-8); *see also In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006).[8]

---

    [7]The earliest proposed use of a filter team of which the Court is aware occurred in 1995. *See United States v. Abbell*, 914 F. Supp. 519 (S.D.Fla. 1995). This case and all cases cited in this section involve computers and electronic discovery.

    [8]John Doe challenges the use of the Government's filter teams based upon four factors laid out by Judge Robertson in *Jackson*. (Mot. Quash 6-8.) Aside from the fact that the Court believes John Doe has misread *Jackson*, the opinion in not binding upon this Court. The Court declines to adopt *Jackson* for the same reasons it declines to adopt *In re Grand Jury Subpoenas*, discussed *infra*.

b. *Analysis*

i. Review of Filter Team Procedure

The Government has provided the Court with a proposed procedure by which its taint team would conduct a privilege review. (Gov't Opp'n, Ex. E.) Although the exact process differs from case-to-case, the Government's proposal here follows a pattern similar to that seen in other cases: first, a "taint team" comprise of attorneys and investigators unrelated to the prosecution of the underlying matter "wall off" from the prosecution team; second, the privileged party provides the team with a list of documents and search terms that may contain or relate to privileged subject matter; third, the filter team segregates all items matching this description and sends a list of the documents to the party; fourth, the team identifies all segregated items which it believes to be privileged and sends them back to the party; finally, the team notifies the party of its intent to release to the prosecution team all segregated items that it believes are not privileged; the privileged party has an opportunity to object before any of these items are released. (*See id.*); *see also Neill*, 952 F. Supp. at 837; *In re Grand Jury Subpoenas*, 454 F.3d at 517.

ii. Issues Raised by the Sixth Circuit

The Sixth Circuit raises a number of concerns with this procedure:

> [T]aint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors . . . It is reasonable to presume that the Government's taint team might have a more restrictive view of privilege . . . [b]ut under the taint team procedure, appellants' attorneys would have an opportunity to assert privilege *only* over those documents which *the taint team has identified* as being clearly or possibly privileged . . . we do not see any check in the proposed taint team review procedure against the possibility that the Government's team might make some false negative conclusions[.]

*In re Grand Jury Subpoenas*, 454 F.3d at 523 (emphasis in original). The circuit court accordingly

17

advocates minimal use of taint teams "primarily in limited, exigent circumstances in which Government officials have already obtained the physical control of potentially-privileged documents through exercise of a search warrant." *Id.* at 522. "[When] the potentially-privileged documents are already in the Government's possession . . . the use of the taint team . . . constitutes an action respectful of, rather than injurious to, the protection of privilege." *Id.* at 522-23.

This Court understands the Sixth Circuit to raise three principle concerns with the taint team procedure. First, the taint team may, purposefully or inadvertently, leak privileged information to the prosecution team. *See id.* at 523. Second, the procedure prejudices the party claiming privilege by providing it inadequate opportunity to raise and defend its claims. *See id.* Third, the filter procedure is generally injurious to a party's privileges. *See id.* at 522. After careful review of these concerns, the Court will respectfully refuse to adopt the Sixth Circuit's standard. The Court will address each concern separately.

iii.     A *Kastigar* Hearing Would Counter the Threat of Leaks by the Taint Team

The first concern is indeed legitimate but is one for which our laws can control. One D.C. district court holds that "[i]f privileged materials are inadvertently or improperly disclosed [by the filter team], *Kastigar*-like hearings may eventually be required." *Hicks v. Bush*, 452 F. Supp. 2d 88, 103-04 (D.D.C. 2006) (Robertson, J.) (internal citation omitted). This Court agrees with Judge Robertson, finding that such hearings provide an appropriate counter-weight to potential harm caused by leaks from the taint team. In such a hearing the party claiming privilege would have the initial burden of showing that the prosecutors or investigators outside the taint team came into contact with privileged information. *See Kastigar v. United States*, 406 U.S. 441, 461-62 (1972). After this showing, the burden who shift to the Government to affirmatively prove by a

18

· preponderance of the evidence that their witnesses and evidence came from legitimate sources. *See id.; see also United States v. North*, 910 F.2d 843, 872 (D.C. Cir. 1990), *vacated on other grounds*, 920 F.2d 940, *cert. denied*, 500 U.S. 941 (1991) (the burden on the Government is preponderance of the evidence). If the Government fails to do so, the Court would take appropriate action to neutralize the harm caused by the alleged leak. *See North,* 910 F.2d at 868-73 (explaining the potential remedies after a *Kastigar* hearing).

This system protects the privileged party in two distinct ways. First, it incentivizes the Government to execute a proper, careful filter procedure in order to avoid leaks of any kind and build a solid record to present to the Court in the event of a challenge. Second, it gives the privileged party a variety of remedies in the event of abuse of carelessness in the filtering process, ranging from exclusion of evidence and witness to dismissal of the indictment. *See North*, 910 F.2d at 869-73. Additionally, participation in the procedure would not waive privilege on any information leaked, because the privileged party's participation is "compelled" as opposed to "voluntary."[9] *See In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). While the threat of leaks by the taint team is a potential danger, the Court believes that the case law cited above mitigates this risk adequately. The Court accordingly finds this concern an unpersuasive reason to limit the use of the taint team procedure.

    iv.    Proper Procedure Neutralizes Prejudice to Party Claiming Privilege

The Sixth Circuit's second concern is yet another valid one. However, it is a concern that the Court can neutralize by ensuring that the Government employs a carefully tailored procedure.

---

[9] The Court does not address whether privilege is waived if the document slips past the taint team due to poorly crafted search terms by the party claiming privilege.

. Under the process proposed by the Government - the process that the Court wholly expects it to use - the privileged party will have the opportunity to identify specific documents that he believes are privileged and to provide search teams to find other potentially privileged documents before the filtering process begins. (Gov't Opp'n, Ex. E, 2-3.) This not only gives him the opportunity to flag entire documents before the Government's review begins but also gives him the ability to dictate the tenor of the entire process by crafting a careful and thorough list of search terms. Once the filter team has segregated all potentially privileged documents, the parties will have an opportunity to litigate any disputes over which documents are actually privileged. (Gov't Opp'n Ex. E, 3.) The Court does not find any obvious prejudice to the privileged party in this procedure. While the Court recognizes that this may not have been the case in the Sixth Circuit, the opportunity for substantial involvement by the privileged party in the process proposed here provides the party ample opportunity to assert and defend its privilege claims. The Court therefore finds the Sixth Circuit's second objection inapposite in this case.

        v.     Taint Teams Are Not Injurious to Privilege in General

The Court reads the Sixth Circuit's third and final objection to be a general conclusion drawn from its specific findings on the two previous concerns. The Court respectfully disagrees with this conclusion based upon its own findings. When properly executed, the taint team procedure does not offend the underlying rationale of either privilege doctrine at issue here. The taint team threatens neither open communication between client and attorney by allowing the prosecutors to discover "damaging information," *see Fisher*, 425 U.S. at 403, nor immediate preparation of legal strategy by allowing the prosecution team to "borrow" the wits of defense counsel, *see Hickman v. Taylor*, 329 U.S. 495, 515 (1947) (Jackson, J., concurring). The entire point of the procedure is to keep this

·information out of the hands of the prosecutors and the investigators. While the specter of Government abuse or neglect looms as a threat to the integrity of this process, federal procedural law provides appropriate remedies should such threat become a reality. *See Kastigar*, 406 U.S. at 461-62.

The Court acknowledges that this process places a burden on the party asserting privilege. This burden, however, is consistent with the general rule that a party must prove privilege before the Court will recognize it. *See In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (party claiming privilege must prove elements before the courts will recognize it). Furthermore, the Court finds that any extra burden placed upon the assertion of privilege is justified by the need to strike a balance with the public's competing interest "in the fair and expeditious administration of the criminal laws." *See Dionisio*, 410 U.S. at 17. Based upon these findings, the Court sees no reason circumscribe the use of Government taint teams and will fully consider it when addressing John Doe's request for a special master.

3. <u>Request for a Special Master's Review</u>

a. *Applicable Law*

As noted earlier the Court has three options for privilege review. The Court may conduct the review itself *in camera*. The decision to proceed *in camera* "rests in the sound discretion of the district court." *See United States v. Zolin*, 491 U.S. 554, 572 (1989). The Court may also appoint a special master to conduct the review. The Court favors this option when the review process presents logistical difficulties for the Court, such as when numerous documents are involved or technical expertise is required to conduct the review. *See* 24 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure*, § 5507 (West 2010). Finally, the Court may order a

21

· Government taint team to work with opposing counsel to segregate and filter privileged documents as discussed above. Although courts have yet to develop a standard for the appropriate use of these teams, courts appear inclined to use them when the documents at issue are too voluminous or the task of reviewing them is too complex for a special master to handle effectively. *See Hicks*, 452 F. Supp. 2d at 103 n.12. Similarly, courts disfavor special masters when the underlying action demands a speedy resolution. *See Black v. United States*, 172 F.R.D. 511, 514, n.4 (S.D. Fla. 1997) (rejecting a request for a special master and citing to *Abbell*, which had been delayed for over two years at the time due to the special master's review).

    b.    *Analysis*

Both sides acknowledge that a privilege review in this matter will involve some degree of technical computer expertise. (*See* Mot. Quash 5 ("[privileged] documents may be fragmented in unallocated space on the devices . . . ."; Gov't Opp'n 15 (stating that an attempt to remove files from the computer may compromise "the integrity of evidence sought by the grand jury").) This alone persuades that Court that *in camera* review is inappropriate. The evidence also shows that review may entail an enormous amount of documentation: the hard drive on the Dell laptop can hold 320 gigabytes of data alone.[10] (Gov't Opp'n, Ex. I, 7.) Although it is possible that the scope of the review may be much smaller, John Doe gives no clear indication of how many documents may be at issue. This weighs against the use of a special master. Finally, the fact that a grand jury awaits information potentially saved on these devices compels the Court to select a method of review that

---

[10]The Court takes judicial notice of the fact that a standard text file typically takes up several hundred kilobytes of space, while a PDF may take up several megabytes. One gigabyte is equal to 1,000 megabytes, while one megabyte is equal to 1,000 kilobytes. Accordingly, the Dell laptop can potentially hold several hundred thousand documents.

22

· will yield the quickest possible results. The Court believes that the Government's wealth of resource and experience as well as its established procedure for handling these types of review render the taint team the most efficient option. When executed in an appropriate manner, as described above, the taint team will satisfy the public's interest in the "expeditions administration of criminal law," *see Dionisio*, 410 U.S. at 17, while safeguarding the privilege interests of John Doe and his attorney. The Court believes that the complexity, volume, and time concerns inherent in this matter make review by a special master inappropriate. The Court will accordingly deny John Doe's request.

## IV. CONCLUSION

For the reasons set forth above, movant John Doe's motion to quash the grand jury subpoena will be DENIED. John Doe's request for a privilege review by a special master will also be DENIED. The Government's motion to compel compliance will be GRANTED, and movant will surrender the request devices within ten days of this ruling.

A separate order shall issue this date.

4/20/10        Redacted Version        Royce C. Lamberth
Date

ROYCE C. LAMBERTH
Chief Judge
United States District Court

23